The DUPLAN CORPORATION et al., Appellants,

v.

DEERING MILLIKEN, INC., et al., Appellees.

No. 75–2049.

United States Court of Appeals, Fourth Circuit.

Argued April 5, 1976.

Decided July 13, 1976.

1216

McNeill Smith, Greensboro, N. C., (Smith, Moore, Smith, Schell & Hunter, Greensboro, N. C., Haynsworth, Perry, Bryant, Marion & Johnstone, Leatherwood, Walker, Todd & Mann, Greenville, S. C., Perrin, Perrin & Mann, Spartanburg, S. C., David Rabin, Greensboro, N. C., Cushman, Darby & Cushman, Washington, D. C., Willkie, Farr & Gallagher, New York City, Parrott, Bell, Seltzer, Park & Gibson, Charlotte, N. C., on brief, for appellants.

Jay Greenfield, New York City (Burns, McDonald, Bradford, Erwin & Few, Greenwood, S. C., Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Butler Means, Evins & Browne, Spartanburg, S. C., Morgan, Finnegan, Pine, Foley & Lee, New York City, for Chavanoz and DMRC; Brumbaugh, Graves, Donohue & Raymond, New York City, Ward, Howell, Barnes & Long, Spartanburg, S. C., for ARCT on brief), for appellees.

Before BOREMAN, Senior Circuit Judge, WIDENER, Circuit Judge, and HADEN, District Judge.[*]

WIDENER, Circuit Judge:

This is an interlocutory appeal, certified under 28 U.S.C. § 1292(b), from an order of the district court denying pre-trial discovery of certain documents containing the mental impressions, conclusions, opinions and legal theories of the appellees' representatives and attorneys regarding certain prior litigation. This appeal marks the third time in the course of this litigation [1] that we have been presented with questions concerning the applicability of the work product doctrine of *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and the scope of Rule 26(b)(3) of the Federal Rules of Civil Procedure.[2]

---

[*] United States District Court for the Northern and Southern Districts of West Virginia, sitting by designation.

1. *Duplan Corp. v. Moulinage et Retorderie de Chavanoz,* 509 F.2d 730 (4th Cir. 1975), cert. den. 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975); *Duplan Corp. v. Moulinage et Retorderie de Chavanoz,* 487 F.2d 480 (4th Cir. 1973).

2. Rule 26(b)(3) FRCP provides:

 Trial Preparation: Materials. Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering the dis-

In our most recent *Duplan* opinion dealing with this subject, 509 F.2d 730, we concluded that opinion work product material, as distinguished from material not containing mental impressions, conclusions, opinions or legal theories, is immune from discovery under Rule 26(b)(3) where the litigation to which that material relates has since terminated. Accordingly, on remand, discovery was limited to factual materials in the possession of the appellees for which the appellants could establish substantial need. Appellants (the throwsters) now seek access to those documents previously denied them as well as certain additional documents, all of which contain opinion work product of the appellees' attorneys and other representatives.

It is the appellants' position that certain of the documents now sought are not trial preparation material and therefore not protected by the work product doctrine. In addition, they argue that all of the documents involved here, regardless of whether or not they are work product, are discoverable under either a purported "crime, fraud, or tort" exception, or, alternatively, a "subject matter waiver" exception to Rule 26(b)(3). The district court, relying upon our decision in *Duplan v. Moulinage et Retorderie de Chavanoz,* 509 F.2d 730 (4th Cir. 1974), disagreed, being of opinion that all of the documents sought here were covered by the work product doctrine and that neither of the exceptions contended for were applicable to Rule 26. Since some of the questions presented had not previously been raised during the course of this litigation, but largely because of the sheer immensity of the litigation, we granted this appeal.

We are now of opinion the district court was correct in concluding that the documents to which the appellants now seek access are subject to Rule 26(b)(3). While we do not find it necessary to reach the question of whether there exists a crime, fraud, or tort, exception to work product doctrine, we do find that a subject matter waiver exception under Rule 26(b)(3) is not applicable to this case. Accordingly, the district court's order denying discovery is affirmed.

The facts of this case have been discussed at some length in our prior decisions on this subject. Briefly stated, this litigation consists of 37 separate patent and antitrust actions which have been consolidated for purposes of trial. The first of these was commenced in 1968 by Moulinage et Retorderie de Chavanoz (Chavanoz), the holder of certain patents on false twist machinery, and Deering Milliken Research Corporation (DMRC), Chavanoz's exclusive use-licensee in the United States, against one of DMRC's sublicensees alleging breach of the patent sublicense and patent infringement. The remaining actions against the appellant-sublicensees were instituted in late 1969 or early 1970 and also asserted breach of the sublicensing agreement and patent infringement.

The sublicensees, all of whom are engaged in texturing, or throwing, synthetic yarns, countered with claims against Chavanoz and DMRC, as well as Ateliers Roannais de Constructions Textiles (ARCT), the manufacturer of the texturing machines embodying, to varying degrees, Chavanoz's patents. The sublicensees (throwsters) asserted that Chavanoz's patents were invalid, unenforceable and not infringed. They also contended that the appellees, along with others, violated the antitrust laws as a result of a settlement agreement entered into in 1964 ending certain patent litigation. Specifically as to this latter allegation, the throwsters asserted that the execution of certain written agreements between the Leesona Corporation, an American manufacturer of false twist machinery, and Chavanoz, DMRC, ARCT and others, was part of a conspiracy to unreasonably restrain trade in violation of the antitrust laws.

Because this purported conspiracy to violate the antitrust laws bears upon the present appeal, it is necessary to briefly

covery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impres-

sions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

expand upon the facts surrounding the settlement agreement. In the late 1950's, Chavanoz and Leesona each owned a number of patents in both North America and Europe. These patents covered inventions relating to the process of false twist texturing. According to appellees, each company believed that one or more of its patents was or might be infringed by the machines of the other. This resulted in patent litigation instituted in both Europe and North America.

This litigation stretched from 1957 until settlement was reached in April of 1964. During this period, preliminary and intermediate decisions relating to issues of patent validity and infringement varied between forums, countries, and years. In 1963, for example, Burlington Industries, Inc., the world's largest throwster and an appellant here, and its subsidiary, Madison Throwing Co., both of whom were engaged in the process of texturing yarn, settled litigation with Leesona, and Madison specifically acknowledged the validity of one of Leesona's patents after the Canadian counterparts to the Leesona patents were held valid. Chavanoz, ARCT, and DMRC understandably maintain that the pendency of this litigation with Leesona had a negative effect on their efforts to break into the American textile market. This was so, they say, because of the insistence of American machinery users that they be protected from suit by Leesona for patent infringement before they would purchase ARCT's machines.

This, according to the appellees, was the atmosphere in which the 1964 settlement was achieved. That settlement agreement provided for a compromise of each side's patent claims against the other in the form of undertakings not to sue one another or one another's licensees for patent infringement under one or more of the false twist patents. It was also agreed that the then pending litigation would be discontinued. In essence, according to the appellees, the

settlement provided for peace between Leesona and Chavanoz and was fostered by a desire on both sides to avoid long and costly litigation.

The throwsters on the other hand impute quite different motives to the appellees' actions in settling this litigation. They contend that the parties involved recognized the weakness of Leesona's patents and the possibility that Chavanoz's patents might not extend to all machines then licensed by Leesona. Thus, they say that continued litigation resulting in Leesona's patents being held invalid would not have been to Chavanoz's benefit since manufacturers would have then been free to market non-infringing, unpatented false twist machines. This, in turn, would have resulted in the discontinuance of use royalties on the ARCT machines for no American manufacturer would have been willing to pay such a royalty when acceptable alternatives would have been available on a royalty-free basis. Therefore, according to the throwsters, Chavanoz and Leesona agreed to settle their disputes in order to preserve their limited monopolies and foreclose competition from other manufacturers.

The resolution of these conflicting views as to the 1964 settlement agreement is, of course, a matter for the district court to resolve upon the trial of this case. We merely set forth a brief abstract of the various contentions of the parties as background to this appeal and do not intimate any opinion as to the merits of either position. With these facts in mind, we turn to appellants' argument.

I

The throwsters first contend that the district court erred in holding that certain documents now sought were work product and, as such, protected by Rule 26(b)(3). These documents, all of which relate to the Leesona litigation and the 1964 settlement agreement, were, with the exception of one, prepared by Leo Soep, a French conseil en brevets,[3] who served as Chavanoz's patent

---

3. The American legal system apparently has no direct equivalent to the French conseil en brevets. For our purposes, however, it is suffi-

cient to note that Soep was not a lawyer, but, at all times relevant here, represented Chavanoz in patent matters.

agent up to and during the time of settlement with Leesona. The remaining document was prepared by one Norman C. Armitage, former general house counsel and vice president of DMRC.[4] The thrust of the throwsters' argument as to these documents is that they were not generated by trial counsel, were not generated for or at his request, and were not a part of or related to any legitimate trial preparation.

These assertions have been foreclosed, however, by our opinion in *Duplan v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730 (4th Cir. 1974). There, we specifically denied discovery of opinion work product material contained in certain documents relating to the 1964 settlement agreement. At issue there were some twenty-three documents, the majority of which were prepared by the same Leo Soep in his capacity as Chavanoz's patent representative. As the district court there pointed out, "opinion work product immunity now applies equally to lawyers and non-lawyers alike." On appeal, we agreed, and, on remand, directed the district court to take "care to protect [those documents, including those prepared by Soep] against disclosure of mental impressions, conclusions, opinion, or legal theories . . . ." 509 F.2d at 737. Thus, both this court and the court below have previously construed the protection of Rule 26(b)(3) to cover documents prepared by Soep relating to the 1964 settlement agreement. The throwsters point to nothing which would distinguish the documents now sought from those before us in our earlier *Duplan* decision (509 F.2d 730). Thus, to the extent the district court's order affords the documents now before us the protection of work product doctrine, as having been prepared by an "attorney" or "representative of a party" "in anticipation of litigation or for trial" or "concerning the litigation", it is fully in accord with our prior holding, and we are of opinion that appellants' contentions to the contrary are without merit. Indeed, as to some of the very documents

sought here, the question has been previously decided in 509 F.2d 730.

## II

The throwsters next assert that all of the documents sought, regardless of their status as opinion work product, are discoverable under what they call a "crime, fraud, or tort" exception to Rule 26(b)(3). Critical to their argument on this point is the district court's finding that the throwsters had made a *prima facie* showing that the appellees were guilty of violating the Sherman Act, 15 U.S.C. § 1 et seq., by virtue of their 1964 settlement agreement with Leesona. This finding was based upon two letters which, according to the district court, "alone" indicated bad faith in settling the Leesona litigation in that both Chavanoz and DMRC felt they had a substantial likelihood of success.

The first of these letters was from Armitage to one John H. Bolton, Jr., Vice-President in charge of Marketing for Whitin Machine Works (an ally of Chavanoz, et al), a party to the Leesona litigation. That letter stated:

> "The sessions this week at Mr. Brumbaugh's office [patent attorney for the appellees] were very valuable. The principle [sic] reason for our meeting was to go over the prior art patents in the matter of the *Leesona v. Cotwool* suit [in South Carolina] and we made notations on a good number which should convince any court that the three [Permatwist] patents [owned by Leesona] in suit are fully anticipated. [i. e., invalid under 35 USC § 102(a)]."

The second letter relied upon by the district court was from Soep to Armitage in which he stated:

> "You will recall that at the time of our meetings in New York and Boston I raised the question as to whether there might not be a valid counterclaim by Whitin against Leesona for violation of the antitrust statutes. Granville [M.

---

4. This document consists of a two-page letter from Armitage to Soep in which certain antitrust claims against Leesona are discussed.

The letter was written in reply to an earlier letter from Soep which is also among the documents sought.

Brumbaugh, attorney for the appellees] has taken this under consideration and has reached an opinion that Whitin would have a good chance of establishing such a counterclaim."

These letters "alone" then were found to be sufficient to make out a *prima facie* showing of bad faith on the part of the appellees in entering into the 1964 settlement agreement. Such bad faith, according to the district court's reading of *United States v. Singer Mfg.*, 374 U.S. 174, 83 S.Ct. 1773, 10 L.Ed.2d 823 (1963), rendered the settlement itself a violation of the Sherman Act.

Given this finding, the throwsters contend that the district court erred in not permitting discovery of the documents sought on the ground that they were nevertheless protected by Rule 26(b)(3). It is their position that communications relating to the settlement cannot be immune from discovery since they were necessarily in furtherance of a crime, or the equivalent of a tort, the alleged conspiracy to violate the Sherman Act. The appellees contend, however, that Rule 26(b)(3) immunity is absolute when applied to opinion work product and that the district court was correct in its ruling.

Whether there is any such crime, fraud, or tort exception to Rule 26(b)(3), we do not decide, for we are of opinion that the district court erred as a matter of law in ruling that the throwsters had made a *prima facie* showing that the appellees had violated the antitrust laws.

■ We begin with the observation that while a *prima facie* showing need not be such as to actually prove the disputed fact,[5] it must be such as to subject the opposing party to the risk of non-persuasion if the evidence as to the disputed fact is left unrebutted. See, e. g., *Rehm v. United States*, 183 F.Supp. 157 (E.D.N.Y.1960); Morgan, *Basic Problems of Evidence*, Vol. 1, p. 18–19

(1954). While such a showing may justify a finding in favor of the offering party, it does not necessarily compel such a finding. *Wright v. Rockefeller*, 376 U.S. 52, 57, 84 S.Ct. 603, 11 L.Ed.2d 512 (1963).

■ Furthermore, it must be borne in mind that the settlement of patent litigation, in and of itself, does not violate the antitrust laws. It is well established that "[w]here there are legitimately conflicting [patent] claims or threatened interferences, a settlement by agreement, rather than by litigation, is not precluded by the [Sherman] Act." *Standard Oil Co. v. United States*, 283 U.S. 163, 171, 51 S.Ct. 421, 424, 75 L.Ed. 926 (1931). See also *North Carolina v. Chas. Pfiser & Co.*, et al., 537 F.2d 67, 75, (4th Cir. 1976); *Ransburg Electro-Coating Corp. v. Spiller & Spiller, Inc.*, 489 F.2d 974, 977–78 (7th Cir. 1973); *Aluminum Co. of America v. Sperry Prods., Inc.* 285 F.2d 911, 926–27 (6th Cir. 1960), cert. den. 368 U.S. 890, 82 S.Ct. 139, 7 L.Ed.2d 87 (1960); *Hutzler Bros. Co. v. Sales Association*, 164 F.2d 260, 267 (4th Cir. 1947). It is only when settlement agreements are entered into in bad faith and are utilized as part of a scheme to restrain or monopolize trade that antitrust violations may occur. *United States v. Singer*, 374 U.S. 174, 83 S.Ct. 1773, 10 L.Ed.2d 823 (1963).

■ In the instant case, the letters relied upon by the district court, merely showing as they do that attorneys or representatives of Chavanoz and its associates expressed opinions at one time or another during the course of protracted litigation that they might prevail as against Leesona, do not, as a matter of law, constitute a *prima facie* showing that the appellees entered into the 1964 settlement in bad faith, that is with intent to restrain trade rather than to avoid litigation. Moreover, we are of opinion that the *Singer* case does not mandate a ruling to the contrary.

---

5. See, for example, *Union Camp v. Lewis*, 385 F.2d 143 (4th Cir. 1967), where this court, in discussing the tort, fraud, or crime exception to the attorney-client privilege, concluded:

"The government met this burden [of establishing a *prima facie* showing that the law-

yer's advice was designed to serve his client in the commission of a crime]. It was not . . . required to prove the crime or fraud in order to secure the evidence." [material otherwise privileged.]

In *Singer,* the government contended that the defendant, Singer Manufacturing, and two of its competitors, Gegauf of Switzerland and Vigorelli of Italy, engaged in a conspiracy to restrain and monopolize interstate and foreign trade in the importation and distribution of zigzag sewing machines. According to the evidence taken at trial, Singer purchased a United States patent covering such machines. It thereupon entered into a cross licensing agreement with Gegauf and Vigorelli and abandoned an interference action that had been declared between its patent and a patent application owned by Gegauf. Thereafter, it acquired by assignment the Gegauf application and was subsequently granted a patent based upon it. Following issuance of this latter patent, Singer instituted four infringement suits against distributors of sewing machines imported from Japan and filed a complaint before the United States Tariff Commission seeking to exclude the importation of certain machines purportedly covered by the claims of its Gegauf patent.

Based upon the foregoing, as well as other evidence, including an agreement to give a broad sweep to the rival patents, the Supreme Court concluded that the Gegauf patent had been placed in Singer's hands to achieve the common purpose of enforcement in order to exclude Japanese machines from the United States. Moreover, it rejected the district court's finding that the Singer acquisition of these patent rights was motivated solely by a legitimate desire to protect its own commercial zigzag sewing machines by resolving conflicting patent rights. Accordingly, it held that Singer had acted in violation of the Sherman Act.

As Mr. Justice White's concurring opinion makes clear, there were two phases to the government's case. One was the conspiracy to exclude the Japanese from the American market, and the other was the collusive termination of a patent interference proceeding pursuant to an agreement between Singer and Gegauf. The majority based its finding of a violation of the Sherman Act on the totality of Singer's conduct and inti-

mated no view as to either phase of the government's case standing alone. 374 U.S. at 197, 83 S.Ct. 1773.

■ Even assuming that the collusive termination of patent litigation, taken alone, might constitute a violation of the Sherman Act, *Singer* makes clear that it is not the mere act of settlement but the intent of the parties in entering into that settlement and their actions pursuant thereto that, in law, constitute such a violation. 374 U.S. at 189, 83 S.Ct. 1773. It is then the anti-competitive intent or purpose of the parties which is the critical factor; a factor which is lacking here, for we are of opinion that settlement of an action by a party which had an expression of opinion from an attorney or representative that it might prevail is insufficient, without more, to make out a *prima facie* showing that the settlement was collusively entered into with an anti-competitive intent.

Were we to adopt a contrary position, we might well effectively discourage settlement in future patent litigation and thereby increase both the number and complexity of these already massive proceedings even where the parties preferred not to litigate. This would be so because of the dilemma which would face litigants contemplating settlement. If an attorney were to advise a litigant at any point during the course of patent litigation that he might successfully prosecute his action, under the theory contended for by the throwsters, settlement should, *prima facie,* expose that party to criminal prosecution and treble damages under the antitrust laws. To unnecessarily place the parties involved in patent litigation in such a position would be contrary to sound judicial policy which requires that settlements be encouraged, not discouraged. *Williams v. First National Bank,* 216 U.S. 582, 595, 30 S.Ct. 441, 54 L.Ed. 625 (1910); *Ransburg Electro-Coating Corp. v. Spiller & Spiller, Inc.,* 489 F.2d 974, 978 (7th Cir. 1973); *Pfizer, Inc. v. Lord,* 456 F.2d 532, 543 (8th Cir.), *cert. den.* 406 U.S. 976, 92 S.Ct. 2411, 32 L.Ed.2d 676 (1972).

Thus, we are of opinion that, assuming that there is a crime, fraud or tort excep-

tion to Rule 26(b)(3), a matter which we do not decide here, the documents now sought are nevertheless not discoverable since the appellants have failed to make a *prima facie* showing that the settlement agreement was entered into with intent to violate the antitrust laws. It may well be that during the trial of this case the throwsters will be able to present sufficient evidence to make such a showing. Nothing in our opinion here forecloses that possibility. The district judge will have the advantage of seeing the witnesses and hearing them testify. Should that occur, the appellants might again seek disclosure of the documents now sought under this claimed exception to the work product doctrine and the district court may wish to reconsider its ruling. We repeat that we express no opinion as to whether or not such an exception exists.

Since pre-trial discovery has been very extensive, and since we have previously decided that factual information, as opposed to opinions, is discoverable upon a proper showing, the throwsters are put to no disability by our holding, for they stressed in argument that it was the opinions they now desire. As the evidence in the case develops, if the district court decides a *prima facie* case has been made of antitrust violation and upon proper request, it may then wish to reconsider whether or not the exception claimed by the throwsters exists, and, if it does exist, whether the throwsters are entitled to the information sought.

■ We also note that the case is now being tried to the court, rather than to a jury as originally scheduled. This may make a precise ruling on the question of this exception of relatively less importance for without a jury such questions as these frequently " . . . become relatively unimportant, the rules of evidence relating to admission and exclusion being intended primarily for the purpose of withdrawing from the jury matter which might improperly sway the verdict, and not for the trial judge, who is presumed to act only upon proper evidence." *McDonnell v. Capital Co.*, 130 F.2d 311, 318 (9th Cir. 1942).

## III

■ Finally, the throwsters contend that certain of the documents now sought are discoverable under a theory of subject matter waiver. Specifically, they challenge rulings of the district court in which it held that such a waiver, while it may be applicable to claims of attorney-client privilege, does not extend to Rule 26(b)(3). In refusing to grant discovery on the basis of this purported exception, the district court reasoned as follows:

"If one work product document is either voluntarily or inadvertently produced from either terminated or pending litigation, where does the waiver end? If a subject matter waiver of a work product immunity claim is recognized as a doctrine of law, harsh results will necessarily follow, conceivably causing wholesale production of all work product documents from either a terminated or a pending lawsuit whenever production of any work product document is considered a waiver. The net effect of such a rule would result in great reluctance to produce *any* work product documents for fear that it might waive the immunity as to *all* similar documents. Such a result is not consonant with the need for economy of judicial time and the avoidance of burdening the courts with *in camera* inspections of all conceivably privileged documents."

We find the district court's analysis persuasive and are of opinion that broad concepts of subject matter waiver analogous to those applicable to claims of attorney-client privilege are inappropriate when applied to Rule 26(b)(3). The throwsters argue, however, that despite the logic of the district court's decision, its rulings are in conflict with the recent decision of the Supreme Court in *United States v. Nobles*, —— U.S. ——, 95 S.Ct. 2160, 48 L.Ed.2d 781 (1975), and, accordingly, must be reversed. We disagree.

In *Nobles,* counsel for a criminal defendant sought to impeach the credibility of key prosecution witnesses by testimony of a defense investigator regarding statements previously obtained from the witnesses by

the investigator. The district court refused to allow the investigator to testify until and unless a copy of his investigative report, inspected and edited by the court *in camera* so as to delete matters not relating to such statements, was submitted to the prosecution. The defense refused to produce the report, and the district court thereupon excluded the investigator's testimony.

The Supreme Court affirmed the actions of the trial judge, holding that where a party makes testimonial use of work product material, the privilege is waived with respect to matters covered in the testimony. As the court there stated:

> "Respondent can no more advance the work product doctrine to sustain a unilateral testimonial use of work product materials than he could elect to testify in his own behalf and thereafter assert his Fifth Amendment privilege to resist cross-examination on matters reasonably related to those brought out on direct examination."

Thus, it is true that *Nobles,* which dealt solely with *Hickman*-type witness statements as opposed to opinion work product, held that the privilege derived from the work product doctrine is not in all cases absolute. Nevertheless, we are of opinion that decision does not control this case.

Here, we are concerned with the immunity accorded the mental impressions, opinions, and legal theories of the appellees' attorneys and representatives. Neither the holding nor the reasoning in *Nobles* can be read to support the throwsters' contention that Rule 26(b)(3)'s protection of opinion work product is limited by a broad theory of subject matter waiver. The holding in *Nobles* was not to that effect. The Court went no further than to sanction disclosure of "the portion of the report [of the investigator] that related to the testimony the investigator would offer to discredit the witnesses' identification testimony."

In addition, and perhaps more to the point, *Nobles* applied the concept of waiver where a party sought to make affirmative testimonial use of the very work product which was then sought to be shielded from disclosure. In the instant case, appellees have neither made nor sought to make any affirmative testimonial use of the documents for which the throwsters claim the work product immunity has been waived. The throwsters contend, however, that it is clear that during the course of the actual trial of this case these documents will be so used. That may well be true and, if and when they are, the principles laid down in *Nobles* may be applicable.[6] This we need not decide at this time, however. It is sufficient for our purposes here to note that the throwsters cannot claim a right of discovery based upon subject matter waiver and what the appellees may or may not do in the future.

■ Thus, to the extent that a concept of subject matter waiver is applicable to Rule 26(b)(3) under the rationale of the *Nobles* case, which held that testimonial use of work product constituted waiver, we are of opinion it does not extend to a case such as this where there has been only inadvertent or partial disclosure in response to specific inquiries, and in which no testimonial use has been made of the work product.[7]

## IV

In conclusion, then, we hold that the documents now sought are work product within the meaning of Rule 26(b)(3); that a subject matter waiver exception to work product immunity does not apply here; and that the conclusion of the district court that the mere fact of the 1964 settlement and the two letters referred to constitute a *prima facie* violation of the antitrust laws was an erroneous legal conclusion.

---

**6.** Whether this waiver principle applies with equal vigor to opinion work product is a matter which we feel is best reserved for decision if and when the question arises.

**7.** Note 11 from *Nobles* is as follows:

"As the Court recognized in *Hickman v. Taylor,* 329 U.S. 495, 508, [67 S.Ct. 385, 392, 91 L.Ed. 451] (1947), the work product doctrine is distinct from and broader than the attorney-client privilege."

The decision of the district court denying discovery is accordingly

*AFFIRMED.*