**In re MARTIN MARIETTA CORPORATION, Appellant.**

**UNITED STATES of America, Plaintiff,**

v.

**William C. POLLARD, Defendant–Appellee.**

**No. 87–3648.**

United States Court of Appeals, Fourth Circuit.

Argued April 8, 1988.

Decided Sept. 6, 1988.

Rehearing and Rehearing In Banc Denied Oct. 14, 1988.

---

Brian Christian Elmer (Richard L. Beizer, Alan W.H. Gourley, Pauline E. Waschek, Crowell & Moring, Washington, D.C., George Beall, Miles & Stockbridge, Baltimore, Md., Frank H. Menaker, Jr., Jay A. Brozost, Martin Marietta Corp., Bethesda, Md., on brief), for appellant.

Robert Harley Bear (James S. Maxwell, Maxwell & Bear, Washington, D.C., on brief), for defendant-appellee.

Before WINTER, Chief Judge, and MURNAGHAN and ERVIN, Circuit Judges.

MURNAGHAN, Circuit Judge:

William C. Pollard, a former employee of Martin Marietta Corporation (Martin Marietta), is under indictment, returned April 7, 1987, by a grand jury of the District of Maryland on three counts. Count I alleges a conspiracy to defraud the Department of Defense (DOD), Counts II and III allege mail fraud. Pollard is charged with operating a scheme to characterize improperly travel cost rebates paid by travel agencies PTI and its subsidiary IVI (companies independent of Martin Marietta) to Maxim, a subsidiary of Martin Marietta, as fees rather than credits against travel costs. The overall effect was that Martin Marietta could overstate the costs for which it received reimbursement by the DOD.

On June 1, 1987, Pollard, under Fed.R. Crim.P. 17(c), subpoenaed Martin Marietta for the production of fifteen categories of documents. On June 12, 1987, Martin Marietta moved to quash. On July 2, 1987, the district court denied the motion to quash but also ruled that the subpoena was overly broad. The court limited the subpoena to uncontested items until the defense es-

tablished a need for particularized items. On September 9, 1987, Pollard limited the scope of the contested items to six categories. At a hearing held the next day the district court allowed Martin Marietta several weeks to determine what documents it would voluntarily produce. On October 1, 1987, Martin Marietta agreed that it would produce the documents responsive to two of the six categories, would produce some of the documents requested under a third category, and had no documents requested under a fourth category. It refused to produce any items in the other two categories. Thus, three categories of documents remained in dispute. They were:

1. *Audit Papers.* Martin Marietta's corporate internal audit reports, workpapers and related supporting documentation (including internal memoranda and internal and external correspondence), covering the audits of Martin Marietta's subsidiary Maxim, and its relationship to travel companies IVI and PTI. [This is the category for which Martin Marietta made selected production.]

2. *Witness Statements.* Notes, transcripts and electronic recordings of interviews with and statements by William Pollard, Richard Westfall, Gregory Levins, John Rayburn, Peter Warren and James Simpson concerning the relationship of Martin Marietta, Maxim, IVI and PTI.

3. *Administrative Settlement Agreement Materials.* All correspondence and notes of unwritten communciations to or from Martin Marietta and the United States Government related to the Administrative Settlement Agreement between the company and the Defense Logistics Agency executed by the company on January 31, 1987.

On October 15, 1987, Pollard moved for an order to compel production of the items withheld by Martin Marietta. At Martin Marietta's request, the court committed itself to a two-step procedure: first, to require production of the documents at issue *in camera;* and second, to give the company another opportunity, after the court reviewed the documents, to argue against their production to Pollard. In the course of that procedure, Martin Marietta acknowledged that portions of some documents it sought to withhold had been earlier quoted in disclosures made by it to the Government, either or both the United States Attorney and the Defense Logistics Agency, part of the Department of Defense.

The district court ordered production of the documents at issue, with the exception of audit papers that had already been made available to the defense, and certain documents relating to the Administrative Settlement Agreement that the court determined after its *in camera* review to be irrelevant. In its accompanying memorandum, the court described its basis for ordering the disclosure of the materials by category. A contempt order was issued when Martin Marietta failed to comply with the order of production.

■ Rule 17(c) implements the Sixth Amendment guarantee that an accused have compulsory process to secure evidence in his favor. *California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984). Enforcement of a Rule 17(c) subpoena is governed by the standards established in *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). A party seeking pretrial production of documents must demonstrate (1) relevancy, (2) admissibility, and (3) specificity with respect to the documents. *Id.* at 700, 94 S.Ct. at 3103.

The district court correctly noted the *Nixon* requirements and then found that Pollard met them. Martin Marietta argues that the court misapplied the *Nixon* requirements. Its chief objection is that it thinks that the district court misapplied the admissibility criterion by improperly using a broad civil discovery standard rather than the narrower criminal evidentiary standard.

Martin Marietta has a heavy burden to meet on appeal.

Enforcement of a pretrial subpoena *duces tecum* must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of

factual issues. Without a determination of arbitrariness or that the trial court finding was without record support, an appellate court will not ordinarily disturb a finding that the applicant for a subpoena complied with Rule 17(c). *Nixon*, 418 U.S. at 702, 94 S.Ct. at 3104 (emphasis in original).

■ We turn to the three *Nixon* requirements. While Rule 17(c) is limited to evidentiary materials, that is not to say that the materials subpoenaed must actually be used in evidence. It is only required that a good faith effort be made to obtain evidence. *Bowman Dairy Co. v. United States*, 341 U.S. 214, 219–20, 71 S.Ct. 675, 678–79, 95 L.Ed. 879 (1951).

■ All the efforts to obtain material that Pollard makes come in a good faith effort to obtain evidence and the admissibility criterion of the *Nixon* requirements is thereby met. He seeks results of an internal audit. Since Pollard did not have direct contact with the DOD, the charge against him for defrauding the DOD is essentially a charge that he obstructed Martin Marietta's corporate internal audit of its subsidiary Maxim. The audit is clearly of evidentiary value. Pollard seeks interview notes, transcripts and electronic recordings concerning the audit. They are of evidentiary value. Pollard seeks correspondence and notes relating to the Administrative Settlement Agreement between DOD and Martin Marietta. They are of evidentiary value to Pollard's defense that he was made a scapegoat. Part of that administrative settlement was agreement by Martin Marietta no longer to fund Pollard's defense. Pollard was not indicted until after Martin Marietta had solved its problems: It pled guilty to criminal charges and administratively settled with the DOD. A subpoena of the administrative agreements is at least a good faith effort to acquire evidence by Pollard for a defense that Martin Marietta hung him out to dry while protecting its own interest.

The district court applied the correct standard for the second *Nixon* requirement: specificity with respect to the documents requested. It found that the requested materials: results of an internal audit, interview notes, transcripts, electronic recordings and correspondence relating to the Administrative Settlement Agreement between Martin Marietta and the DOD, were described with sufficient specificity. In that regard, we note that Pollard had, at the district court's order, greatly limited the scope of documents sought.

While the district court did not make detailed findings regarding relevancy that requirement, the third of the three *Nixon* requirements, was met. Further, while the Supreme Court in *Nixon* established relevancy and admissibility as separate requirements, it seems that admissibility subsumes relevancy since one aspect of admissibility is relevance.

The district court concluded that the *Nixon* requirements were met. That conclusion was not an abuse of discretion and will not be disturbed. *Nixon*, 418 U.S. at 702, 94 S.Ct. at 3104.

Martin Marietta next argues that, even if the documents were within the scope of a Rule 17(c) subpoena, they are protected from disclosure by either or both of the attorney-client and work-product privileges. A subpoena *duces tecum* should be quashed or modified if it calls for privileged matter. C. Wright, Federal Practice & Procedure Criminal 2d § 275, at 162–163. Pollard argues that Martin Marietta in settling with the government both as to criminal charges and in the Administrative Settlement Agreement with the DOD impliedly waived the attorney-client and work-product privileges. There can be no dispute but that otherwise privileged materials were disclosed to the United States Attorney and the DOD. The issue is the extent of the implied waiver thereby created.

■ Implied waiver nullifies a privilege when disclosure of a privileged communication has vitiated confidentiality. Unlike express waiver which allocates control of the privilege between parties to the communication, implied waiver allocates control of the privilege between the judicial system and the party holding the privilege.

Comment, *Developments—Privileged Communications,* 98 Harv.L.Rev. 1450, 1629–30 (1985).

Martin Marietta argues for application of a limited implied waiver as to both privileges. Most courts continue to state the rule of implied waiver in absolute form— any disclosure of a confidential communication outside a privileged relationship will waive the privilege as to all information related to the same subject matter. That is commonly referred to as subject matter waiver as opposed to limited waiver for which Martin Marietta argues. However, competing policy concerns, such as facilitating the settlement of litigation, permitting full cooperation among joint defendants, expediting discovery and encouraging voluntary disclosure to regulatory agencies have led courts to carve out exceptions to the purportedly absolute rule of waiver. Martin Marietta argues that an exception should be found in the present case so as to limit the waiver to the information that it actually disclosed to the government (copies of which Pollard has been provided) rather than implying a waiver as to all materials on the same subject as those provided the government.

The Fourth Circuit has previously rejected the limited waiver concept as to the attorney-client privilege and as to non-opinion work-product. We have embraced the limited waiver concept as to opinion work-product. Since, in the present case, we are unsure whether the documents ordered produced include opinion work-product, we remand the case to the district court to consider whether opinion work-product materials were included in the materials ordered produced. We agree that a subject matter waiver has been worked as to the attorney-client privilege and as to non-opinion work-product.

*Attorney–Client Privilege.*

The Fourth Circuit has not embraced the concept of limited waiver of the attorney-client privilege. It has held that if a client communicates information to his attorney with the understanding that the information will be revealed to others, that information as well as " 'the details underlying the data which was to be published' " will not enjoy the privilege. *United States v. (Under Seal),* 748 F.2d 871, 875 (4th Cir. 1984) (quoting *In re Grand Jury Proceedings,* 727 F.2d 1352, 1356 (4th Cir.1984) (quoting *United States v. Cote,* 456 F.2d 142, 145 (8th Cir.1972))).

The District of Columbia Circuit has had frequent occasion to consider the waiver resulting from disclosure of privileged material to the federal government and has likewise not embraced the concept of limited waiver as to the attorney-client privilege. *In re Subpoenas Duces Tecum,* 738 F.2d 1367 (D.C.Cir.1984). In that case Tesoro Petroleum provided the Securities and Exchange Commission (SEC) with information regarding illegal foreign bribes in return for more lenient treatment from the SEC. Tesoro shareholders brought a derivative suit and sought the documents in discovery. The court rejected the limited waiver argument.

A similar result is required here. In September and November 1986 Martin Marietta submitted to the United States Attorney a Position Paper describing why the company should not face indictment. The paper contains assertions: "of those consulted within the Company all will testify that any qualms they had about the arrangement had nothing to do with worries about fraud" and "there is no evidence, testimonial or documentary, that any company officials in the meeting [of November 17, 1983] except Mr. Pollard and his Maxim employees, understood that Maxim had departed from the strict procedures of its IVI contract." Pollard's subpoena seeks in category 1 the audit papers and in category 2 witness statements from which the Position Paper statements were derived. Like the Fourth Circuit case of *In re Grand Jury Proceedings,* the Position Paper as well as the underlying details are no longer within the attorney-client privilege. Similarly and more clearly the disclosures made to the Defense Logistics Agency in the Administrative Settlement Agreement and sought in category 3 are not privileged and are subject to disclosure under the subpoena. All that is sought with regard to the Ad-

ministrative Settlement Agreement is the actual communications between Martin Marietta and the DOD. Thus, all the materials at issue in the present case are either information revealed to others or details underlying the data that was published. Accordingly, they do not enjoy an attorney-client privilege from disclosure under a Rule 17(c) subpoena.

### The Work–Product Privilege.

■ While the attorney-client privilege is intended to promote communication between attorney and client by protecting client confidences, the work-product privilege is a broader protection, designed to balance the needs of the adversary system: promotion of an attorney's preparation in representing a client versus society's general interest in revealing all true and material facts to the resolution of a dispute. *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975); *In re Subpoena Duces Tecum*, 738 F.2d at 1371 (citing *Hickman v. Taylor*, 329 U.S. 495, 509–12, 67 S.Ct. 385, 2170, 91 L.Ed. 451 (1947)).

*Nobles* made clear that the work-product doctrine not only applies in criminal cases, but that it plays an even more vital role in criminal than in civil cases. *Id.* at 238, 95 S.Ct. at 2170. Nonetheless, the Court stated that it is only a qualified privilege subject to waiver. The signal feature of the implied waiver in that case, and in the one at bar, is the attempt to make testimonial use of work-product materials.

> What constitutes a waiver with respect to work-product materials depends, of course, upon the circumstances. Counsel necessarily makes use throughout trial of the notes, documents, and other internal materials prepared to present adequately his client's case, and often relies on them in examining witnesses. When so used, there normally is no waiver. But where, as here, counsel attempts to make a testimonial use of these materials the normal rules of evidence come into play with respect to cross-examination and production of documents.

*Id.* at 239 n. 14, 95 S.Ct. at 2171 n. 14.

In *Nobles* defense counsel hired a private investigator after the alleged crime, a bank robbery, had taken place. The investigator interviewed two witnesses, a bank teller and customer, both of whom were present during the alleged robbery, and preserved the essence of those conversations in a written report. At trial, the witnesses testified for the prosecution. Defense counsel relied on the investigator's report during their cross-examinations. Both witnesses denied having made statements to the investigator that cast doubt on their trial testimony. The Supreme Court indicated that up to that point no waiver of the work-product privilege was worked. *Nobles*, 422 U.S. at 239, 95 S.Ct. at 2170.

Defense counsel's next trial tactic changed that conclusion. Counsel sought to put the investigator on the stand and contrast his recollection of the contested statements with the recollections of the two witnesses. The trial court ruled that a copy of the entire portion of the investigator's report dealing with the statements would have to be submitted to the prosecution for inspection at the completion of the investigator's testimony. The defense chose not to disclose the report and suffered the consequence of not being allowed to have the investigator testify. The Supreme Court agreed with the trial court's ruling. The Court indicated that defendant, "by electing to present the investigator as a witness, waived the [work-product] privilege with respect to matters covered in his testimony." *Id.* at 239.

After the Court indicated that testimonial use of work-product implies a waiver, it spoke to the scope of that waiver and rejected an argument for limited implied waiver such as that advanced by Martin Marietta in the present case. The Court indicated that the waiver created by testimonial use means that the normal rules of evidence with respect to cross-examination and production of documents apply; it did not simply indicate that the privilege was lost as to the matters actually disclosed.

Martin Marietta argues that the waiver should be implied only as to those work-product materials actually disclosed. The *Nobles* court did not agree.

If the Court had accepted an argument akin to Martin Marietta's in the *Nobles* case, it would have concluded that the privilege would be waived only as to the investigator's testimony on the witness stand (what was actually disclosed) rather than ruling that the waiver would encompass the entirety of the report from which the disclosures were drawn (data underlying the disclosure). Thus, if it had accepted the notion of implied waiver it would have found the district court in error since waiver should have applied only to the testimony, not the report.

We considered *Nobles* and the scope of an implied waiver of the work-product privilege in *Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1222–23 (4th Cir.1976). We bifurcated work-product into opinion and non-opinion work-product. We noted that *Nobles* dealt with non-opinion work-product and that *Nobles* had held that subject matter waiver applies to non-opinion work-product when testimonial use of non-opinion work-product is made.

We apply those principles of *Nobles* as interpreted by *Duplan* to the present case. Here, testimonial use has been made of non-opinion work-product. That was the factual situation in *Nobles*. We conclude that disclosure by Martin Marietta to the federal government, the United States Attorney and the DOD, when the government and Martin Marietta were adversaries constitutes testimonial use. Three factors are important in that conclusion. First, we note that the federal government's and Martin Marietta's interests were decidedly adverse during the proceedings at issue. Martin Marietta faced criminal charges in the one instance and debarment from federal contracting in the other. We do not decide the issue of disclosures in less adverse circumstances like regulatory disclosures. Second, we note that Martin Marietta made an express assurance of completeness of its disclosure to the United States

Attorney. Third, we note that the disclosures were made in a direct attempt to settle active controversies between Martin Marietta and the United States Attorney and the DOD. Not only was there not community of interest, the disclosures were made under promise of completeness to induce an adversary to settle. *See In re Doe*, 662 F.2d 1073, 1081 (4th Cir.1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982).

Thus, Martin Marietta has impliedly waived the work-product privilege as to all non-opinion work-product on the same subject matter as that disclosed. The disclosure of Martin Marietta was made broad by its express assurance of completeness of its disclosure to the United States Attorney, so that the subject matter of the disclosure and the waiver is comprehensive, and includes all of the company's non-opinion work-product relating to the investigation that it conducted.

Counsel for Martin Marietta made oral representations in appellate argument that the district court's order encompassed materials involving pure legal theory or opinion. We realize that non-opinion work product necessarily will be reflective of a counsel's approach, but we think a distinction can be made between non-opinion work product, which may nevertheless be ordered produced if counsel has waived work product protection, and pure mental impressions severable from the underlying data and arguably not subject to subject matter waiver. We understood counsel for Martin Marietta to represent that the district court's order encompassed items of pure opinion or legal theory that may be severed from the underlying information.[1] In light of these representations, we feel that it is incumbent upon us to decide a point of law we reserved in *Duplan*: whether subject matter waiver "applies with equal vigor to opinion work product."

1. Counsel for Pollard conceded in oral argument before this Court that it was not his original intent to subpoena documents containing, hypothetically, marginal notes written by an attorney to convey his own mental impressions or thoughts, distinct from, for example, notes and memoranda summarizing interviews with employees concerning the audit, but that the district court's order encompasses such statements, and that he now seeks them under the district court's order.

540 F.2d at 1223 n. 6. We hold that the doctrine does not apply to such materials.

We think that when there is subject matter waiver, it should not extend to opinion work product for two reasons.

First and most generally, opinion work product is to be accorded great protection by the courts. While certainly actual disclosure of pure mental impressions may be deemed waiver, and while conceivably there may be indirect waiver in extreme circumstances, we think generally such work product is not subject to discovery. While, as we recognized in *Duplan*, the Supreme Court's reasoning in *Nobles* necessarily implies that the privilege derived from the work product doctrine is not in all cases absolute, *see Duplan*, 540 F.2d at 1223, the plain language of Fed.R.Civ.P. 26(b)(3) suggests especial protection for opinion work product:

> In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Secondly, the underlying rationale for the doctrine of subject matter waiver has little application in the context of a pure expression of legal theory or legal opinion. As we noted in *Duplan*, the Supreme Court applied the concept in *Nobles:*

> where a party sought to make affirmative testimonial use of the very work product which was then sought to be shielded from disclosure.

540 F.2d at 1223. There is relatively little danger that a litigant will attempt to use a pure mental impression or legal theory as a sword and as a shield in the trial of a case so as to distort the factfinding process. Thus, the protection of lawyers from the broad repercussions of subject matter waiver in this context strengthens the adversary process, and, unlike the selective disclosure of evidence, may ultimately and ideally further the search for the truth.

We therefore vacate the district court's order as to all items for which work product protection was claimed, and remand with instructions that the district court once again review these documents *in camera*. We think it proper for the district court, in the first instance, to conduct such a review. In so ruling, we recognize that the line between opinion and non-opinion work product can be a fine one.[2] But what should not be ordered to be disclosed are pure expressions of legal theory or mental impressions.

On remand, it will of course be Martin Marietta's burden of proof to demonstrate that the documents included in the district court's order include opinion work product. Martin Marietta must provide specific and detailed indications of where such work product is located in the documents in order to enable the district court to conduct an expeditious review and redact pure legal theories, impressions, or opinions in those documents or portions thereof that Martin Marietta has not actually disclosed to the government or others.

We therefore affirm the district court's order as to all documents for which work product protection was not claimed, and vacate as to all documents for which the work product privilege was claimed for further proceedings consistent with this opin-

---

**2.** The distinction is recognized implicitly in Fed. R.Civ.P. 26(b)(3) and in practice should not present great theoretical difficulties. For example, in the instant case, Martin Marietta having quoted from some audit interviews, the transcript of these interviews has been waived under the broad doctrine of subject matter waiver. Similarly, work product protection has been waived as to most of the internal notes and memoranda on these interviews which, by way of summarizing in substance and format the interview results, Martin Marietta used as the basis of its disclosure to the government on its audit results. These are evidentiary materials, from which Pollard hopes to adduce evidence supporting his scapegoat theory. However, in disclosing such results, Martin Marietta apparently would not disclose nor would intend to disclose, hypothetically, marginal notations on such documents such as: "This person does not appear to be credible; let's not call him as a witness if we have to go to trial on this one." Such an expression of legal opinion, thus detached from the data which Martin Marietta did disclose, would not be subject to subject matter waiver.

ion.[3]

VACATED AND REMANDED.

**3.** One final matter remains. The United States Attorney's office has written the court about the Position Paper presented to it. That office wants, regardless of outcome of the present case, to disclose it to Pollard, and asks that our order include permission for the government to do so. That decision of the United States Attorney is independent of the case at bar and we decline to render an opinion to the United States Attorney on whether to disclose it.