**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 17-4183**

———————

In re: GRAND JURY 16-3817 (16-4)

------------------------------

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

      v.

UNDER SEAL 1,

              Intervenor - Appellant.

———————

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Liam O'Grady, District Judge. (1:16-dm-00062-70)

———————

Argued: January 25, 2018                   Decided: June 27, 2018

———————

Before GREGORY, Chief Judge, NIEMEYER, and AGEE, Circuit Judges.

———————

Vacated and remanded by unpublished opinion. Chief Judge Gregory wrote the opinion, in which Judge Agee joined. Judge Niemeyer wrote a separate opinion concurring in the judgment.

———————

**ARGUED:** Peter John Romatowski, JONES DAY, Washington, D.C., for Appellant. John Alexander Romano, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Karen P. Hewitt, San Diego, California, Meir Feder, New York, New York, Kerri L. Ruttenberg, Washington, D.C., Daniel E. Reidy, JONES DAY, Chicago, Illinois; David N. Kelley, DECHERT LLP, New York, New York; Brockton B. Bosson, CAHILL GORDON & REINDEL LLP, New York, New York, for Appellant.

Dana J. Boente, United States Attorney, Jamar K. Walker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia; Tarek Helou, Assistant Chief, Lorinda I. Laryea, Trial Attorney, Katherine A. Raut, Trial Attorney, Fraud Section, Kenneth A. Blanco, Acting Assistant Attorney General, Trevor N. McFadden, Deputy Assistant Attorney General, Criminal Division, Appellate Section, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Chief Judge:

Appellant corporation ("X Corp.")[1] and the Government dispute whether a written agreement between them preserved X Corp.'s attorney-client privilege and work-product protection for information that the General Counsel of an X Corp. subsidiary disclosed to the Government. We hold that it does.

I.

Several years ago, the U.S. Attorney's Office for the Eastern District of Virginia and the Fraud Section of the U.S. Department of Justice (collectively the "Government") opened a grand jury investigation into whether X Corp. and its subsidiaries violated certain federal laws. To facilitate the investigation, X Corp. entered into a series of written agreements with the Government, permitting employees of X Corp. and its subsidiaries to share with the Government information protected by attorney-client privilege and work-product protection. The Department of Justice (DOJ) drafted the agreements, all of which are materially the same. Under these agreements, the Government obtained documents and interviewed eighteen current and former employees.

One such agreement (the "Agreement"), at issue here, specifically allowed the Government to interview the former General Counsel ("Doe") of an X Corp. subsidiary. The Agreement acknowledged that during the interview, Doe "might disclose privileged

---

[1] The identity of the Appellant in this case is sealed. We therefore refer to the Appellant by the pseudonym "X Corp." and use other pseudonyms or generic terms to identify related actors.

3

or protected information . . . defined herein as 'Protected Information.'" J.A. 39. The Agreement's three operative paragraphs read as follows:

> Please be advised that, to the extent any Protected Information is provided to the Fraud Section or EDVa pursuant to this agreement, [X Corp. and its directors] do not intend to waive the protection of the attorney work product doctrine, attorney-client privilege, or any other privilege.

> The Fraud Section and EDVa will maintain the confidentiality of any Protected Information provided to the Fraud Section and EDVa pursuant to this agreement and will not disclose such information to any third party, except to the extent that the Fraud Section or EDVa determines in its sole discretion that disclosure would be in furtherance of the Fraud Section's or EDVa's discharge of its duties and responsibilities or is otherwise required by law.

> The Fraud Section and EDVa each agree that it will not assert that the disclosure of any Protected Information by [Doe] provides the Fraud Section or EDVa with additional grounds to subpoena other privileged materials from [X Corp. and its directors] or [Doe] although any grounds that exist apart from such disclosure shall remain unaffected by this agreement.

J.A. 39–40. (We will refer to these paragraphs as "First Clause," "Second Clause," and "Third Clause" respectively.) Attached to the Agreement was a list of topics of "Protected Information" that Doe might disclose. The Government interviewed Doe pursuant to this Agreement, and Doe indeed disclosed privileged and protected information.

Years later, the Government subpoenaed Doe to testify before a grand jury about the same statements Doe made during the interview.[2] X Corp. moved to intervene on the ground that the subpoena seeks privileged or protected information. The district court granted the intervention. X Corp. then moved for a protective order to quash the subpoena.

---

[2] The Government concedes that the Agreement precludes it from seeking additional information not disclosed in the interview.

4

Finding that the Agreement waived attorney-client privilege and work-product protection for Doe's interview statements, the district court denied X Corp.'s motion. X Corp. timely appealed.

## II.

We have jurisdiction under 28 U.S.C. § 1291 and the *Perlman* doctrine to review the district court's order denying X Corp.'s motion to quash. *See Perlman v. United States*, 247 U.S. 7, 13 (1918); *In re Grand Jury Subpoena*, 836 F.2d 1468, 1470 n.2 (4th Cir. 1988). The *Perlman* doctrine provides that a disclosure order, such as the one here, "directed at a disinterested third party is treated as an immediately appealable final order because the third party presumably lacks a sufficient stake in the proceeding to risk contempt by refusing compliance." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 18 n.11 (1992); *accord In re Naranjo*, 768 F.3d 332, 346 (4th Cir. 2014) (holding that *Perlman* doctrine applies "when there exists a real possibility the third party will not risk being found in contempt" (internal quotation marks omitted)). Here, Doe—the party directed to testify to allegedly privileged information—is a disinterested third party because Doe no longer works for X Corp. or its subsidiary.

## III.

The merits of this case turn on whether the Agreement preserved X Corp.'s attorney-client privilege and work-product protection such that X Corp. may prevent Doe from

testifying before the grand jury.  Interpretation of the Agreement presents a question of law that we review de novo.  *See United States v. Lopez*, 219 F.3d 343, 346 (4th Cir. 2000).

The parties agree on several important points:  (1) The information that Doe provided in the interview—and that the Government now seeks to elicit before the grand jury—was protected by attorney-client privilege and work-product doctrine before Doe disclosed it.  (2) Any voluntary disclosure of privileged or protected information typically waives both attorney-client privilege and work-product protection.  *See In re Martin Marietta Corp.*, 856 F.2d 619, 622–23 (4th Cir. 1988).  And (3) parties may contract to limit the effect of such a disclosure on the disclosing party's right to assert privilege in future proceedings.  *See, e.g.*, Fed. R. Evid. 502(e) (providing that agreement to limit effect of waiver by disclosure is binding on parties to it); *United States v. Deloitte LLP*, 610 F.3d 129, 141 (D.C. Cir. 2010) (indicating that confidentiality agreement between disclosing party and recipient may prevent waiver of work-product protection); *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1427 (3d Cir. 1991) (noting that disclosure agreement between company and DOJ preserved company's right to invoke attorney-client privilege against DOJ).

The sole question is whether the Agreement here limited the effect that Doe's disclosure otherwise would have had on X Corp.'s right to assert privilege against the Government, the other contracting party.  To answer that question, we apply standard principles of contract interpretation.  *See United States v. Gillion*, 704 F.3d 284, 292 (4th Cir. 2012).

6

## A.

When interpreting a contract, we look at the agreement's language to determine the parties' intent. *Quesenberry v. Volvo Trucks N. Am. Retiree Healthcare Benefit Plan*, 651 F.3d 437, 440 (4th Cir. 2011). We must read the contract "to give effect to all its provisions and to render them consistent with each other." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995); *accord Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 267 (4th Cir. 2011) (noting that contracts "must be read 'as a whole'" and so that provisions harmonize (citation omitted)). "Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent." *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015) (quoting 11 R. Lord, Williston on Contracts § 30:6, p. 108 (4th ed. 2012)).[3]

## B.

Applying these principles, we conclude that the Agreement preserves X Corp.'s privileges as to the Government. Holding otherwise would require us to discount the plain language of the Agreement's First Clause, which expressly reserves those privileges. The Government argues that, because the Agreement's Second Clause permits the Government to share the information it received from Doe with third parties in carrying out its responsibilities, the First Clause cannot mean what it says. Instead, the Government

---

[3] We reject the Government's suggestion that, because courts construe the attorney-client privilege narrowly, we should disfavor a finding that a contract's language preserves privilege. Principles governing the scope of the attorney-client privilege have no bearing on the contract-interpretation question before us.

7

contends, the First Clause provides a basis for X Corp. to assert privilege only against third parties. We find nothing in the Agreement or the law to support such a construction. While the Agreement permits the Government to use the information it obtained from Doe in its investigation of X Corp., it precludes the Government from compelling Doe to testify to that information in a judicial proceeding.

The First Clause plainly conveys X Corp.'s intent not to waive any privileges. It states, "[T]o the extent any Protected Information is provided to the Fraud Section or EDVa pursuant to this agreement, [X Corp. and its directors] do not intend to waive the protection of the attorney work product doctrine, attorney-client privilege, or any other privilege." J.A. 39. This language contemplates that Doe would disclose privileged information in the interview and provides that X Corp. retains its privileges notwithstanding that initial disclosure. Nothing in the Agreement qualifies this reservation of privilege.

The Government argues that the First Clause has no effect on the Government. In its view, the Second Clause waives X Corp.'s privileges as to the Government by authorizing the Government to disclose the Protected Information to third parties. The Second Clause states that the Government will maintain the confidentiality of any privileged information that Doe provided "except to the extent that the Fraud Section or EDVa determines in its sole discretion that disclosure would be in furtherance of the Fraud Section's or EDVa's discharge of its duties and responsibilities or is otherwise required by law." J.A. 39. Therefore, according to the Government, the First Clause cannot preserve privilege against the Government's subpoena; its only effect is to preserve privilege against potential third-party requests for disclosure. We disagree.

8

The Government's reading fails to account for the difference between the topic of the First Clause—privilege—and that of the Second Clause—confidentiality. Privilege is "the right to refuse to disclose information in response to *judicial* inquiry." 23 Charles Alan Wright et al., Federal Practice & Procedure § 5423 (1st ed. 2018) (emphasis added). By agreeing in the First Clause that X Corp. retained its privileges, the parties agreed that the Government could not compel disclosure of the Protected Information in judicial proceedings. In contrast, confidentiality involves "prevent[ing] others from making *extrajudicial* disclosures." *Id.* (emphasis added). Thus, in the Second Clause, the parties agreed that the Government would not share the Protected Information with third parties outside judicial proceedings except in furtherance of its duties.

Contrary to the Government's position, the exception in the Second Clause qualifies only the Government's promise to keep the information confidential. *See Abbott v. United States*, 562 U.S. 8, 25–26 (2010) ("The 'grammatical and logical scope' of a proviso . . . 'is confined to the subject-matter of the principal clause' to which it is attached." (quoting *United States v. Morrow*, 266 U.S. 531, 534–35 (1925))). It does not modify the First Clause and thus does not negate X Corp.'s reservation of privilege. The Second Clause's exception allows the Government to share the Protected Information in certain circumstances out of court, but it does not permit the Government to compel disclosure of that information in court. To be sure, absent an agreement, voluntary disclosures of information—whether Doe's initial disclosure to the Government or the Government's further disclosure to other parties—vitiate the attorney-client privilege and work-product protection. *See In re Grand Jury Subpoena*, 341 F.3d 331, 336 (4th Cir. 2003) (attorney-

9

client privilege); *In re Martin Marietta*, 856 F.2d at 625 (work-product protection). But, here, the First Clause prevents that result; it preserves X Corp.'s privileges, at least as to the Government, even if Doe disclosed the information in the interview and even if the Government in turn disclosed it to a third party.[4]

Moreover, we find the Government's interpretation of the First Clause unpersuasive. Saying that the First Clause does not bind the parties that signed the Agreement, but instead potentially addresses X Corp.'s rights against third parties that did not sign it, effectively renders the First Clause meaningless. Disclosure agreements, such as the one here, bind only the parties to the agreement, not third parties. *See* Fed. R. Evid. 502(e) (providing that agreements limiting effect of waiver by disclosure do not bind third parties unless incorporated into court orders). And, generally, waiver of privilege as to the Government results in waiver as to all other parties.[5] Nothing in the clause itself supports the distinction the Government draws either. Given both our obligation to give meaning

---

[4] We do not decide whether the Agreement preserves X Corp.'s privileges vis-à-vis a third party to whom the Government disclosed information from Doe's interview, as that is not the question before us. For the same reason, we find inapposite the cases the Government cites involving attempts by third parties to access information a company shared with the government under a confidentiality agreement. *See In re Pacific Pictures Corp.*, 679 F.3d 1121 (9th Cir. 2012); *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179 (10th Cir. 2006); *In re Mutual Funds Investment Litigation*, 251 F.R.D. 185 (D. Md. 2008).

[5] All but one of our sister circuits have rejected the selective-waiver doctrine. *See Pacific Pictures*, 679 F.3d at 1127 (collecting cases). And, although the Fourth Circuit has not expressly decided the selective-waiver question, we do not think a party as well-represented as X Corp. would gamble on us joining the one circuit that recognizes the doctrine—particularly in light of our prior cases. *See In re Weiss*, 596 F.2d 1185, 1186 (4th Cir. 1979) (per curiam) (finding that selective-waiver argument raised as defense to grand-jury subpoena was not "compelling reason" to reverse district court decision compelling testimony).

to all clauses of a contract and the First Clause's plain language, we conclude that the First Clause means what it says:  X Corp. retains its privileges as to the Government.

The Government further argues that the Agreement's Third Clause presumes a waiver of privilege and thus indicates that the preceding paragraphs do not preserve X Corp.'s privileges.  The Third Clause states that the Government agrees not to assert that Doe's disclosure of privileged information gives the Government additional grounds to subpoena other privileged materials from X Corp.  In the Government's view, this provision would be unnecessary if the First Clause preserved X Corp.'s privileges.

We agree that the Third Clause presumes a disclosure, which would cause a waiver absent an agreement, but nothing in the Third Clause requires finding that the other provisions create a waiver.  The First and Third Clauses serve distinct purposes.  While the First Clause preserves X Corp.'s privileges for the disclosed information, the Third Clause preserves X Corp.'s privileges for other related information.  And the latter is not superfluous because Doe's disclosure would likely waive privilege not only for the specific information revealed, but for all information on the same subject matter.  *See United States v. Bolander*, 722 F.3d 199, 222 (4th Cir. 2013); *Hawkins v. Stables*, 148 F.3d 379, 384 n.4 (4th Cir. 1998); *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982).

In essence, the Agreement maintains the status quo regarding X Corp.'s privileges.  It nullifies the effect of both Doe's initial disclosure of privileged information and the Government's later disclosure of the same information on X Corp.'s ability to assert privilege against the Government.  As a result, X Corp. may assert privilege here as if Doe had never disclosed the information in the first instance.

11

Construing the Agreement to preserve X Corp.'s privileges also serves important policy considerations. Cooperation between private entities and the Government furthers the truth-finding process. Such negotiations "give potential defendants an opportunity to explain away suspicious circumstances, give the government an opportunity to avoid embarrassing and wasteful mistakes, and give the public a greater likelihood of a just result." *In re Keeper of Records*, 348 F.3d 16, 28 (1st Cir. 2003). Declining to hold the Government to the terms of an agreement it struck would discourage private entities from cooperating with the Government in the future.

IV.

For the foregoing reasons, the district court's decision denying X Corp.'s motion for a protective order is

*VACATED AND REMANDED.*

12

NIEMEYER, Circuit Judge, concurring in the judgment:

While I would read the Second Clause to modify the First Clause, concluding that they both implicate the attorney-client privilege — as confidentiality is an essential aspect of that privilege — I find the exception in the Second Clause and its effect on the privilege to be ambiguous. To make the exception meaningful, it must be referring to some external event that prompts the Justice Department to conclude that it must, as a matter of duty, disclose the privileged material. Otherwise, the exception would swallow the promise of confidentiality, rendering it meaningless. But the exception provides no guidance as to what such an event might be. Because a waiver of the attorney-client privilege — one of the most important and protected in the law — should be clear, I agree that we should not, in such an ambiguous circumstance, default to find a waiver. Accordingly, I concur in the judgment.