**NUTRAMAX LABORATORIES, INC., Plaintiff,**

v.

**TWIN LABORATORIES INC., et. al., Defendants.**

No. Civ.AB–97–787.

United States District Court, D. Maryland, Baltimore Division.

Dec. 7, 1998.

Robert R. Bowie, Jr., Bowie & Jensen, LLC, Townson, MD, for Plaintiff.

John C. Dougherty, Piper & Marbury, L.L.P., Baltimore, MD, for Defendant.

## MEMORANDUM AND ORDER

GRIMM, United States Magistrate Judge.

### BACKGROUND

This case consists of six lawsuits, consolidated for discovery, against more than twenty defendants involving the patents of the plaintiff, Nutramax. It has been assigned to me for resolution of discovery disputes. 28 U.S.C. § 636(b); Local Rule 301.5.a. Pending is the defendants' motion to compel the production of various documents used by counsel for the plaintiff to prepare a number of witnesses, including management officials of Nutramax, for their depositions. (Paper no. 145). The Court ordered discovery to proceed in stages, the first devoted to document production and interrogatories, the second to non-expert depositions. By order dated July 20, 1998, I permitted the defendants to take a series of depositions during the first phase of discovery, for the limited purpose of developing facts relevant to the defense that the patents at issue in this case are invalid because Nutramax allegedly marketed Cosa-min—the product now covered by its patents—more than one year before it applied for the first patent, the so called "on sale bar." defense.[1] (Paper no. 122). Defendants contend that if this affirmative defense is successfully established, it will end the case. The efforts of the defendants to establish this defense, and the plaintiff to oppose it, have generated a number of disputes, some of which have had to be resolved by the court. Defendants allege that Nutramax took advantage of the stay of discovery, which existed before the discovery scheduling order was issued, to engage in unfair activities in the marketplace, including making public announcements that the defendants had been sued for patent infringement, and employing strongarm tactics with customers and suppliers of the defendants.[2] Nutramax denies any improper conduct. In addition, defendants state that in 1994, and again in 1998, after this litigation had been filed, officials at Nutramax destroyed records relevant to the "on sale bar" defense. Nutramax does not deny that records were discarded, but asserts that this was not done with the intention of destroying evidence. The exchanges between the parties on this issue have generated as much heat as light.

During the depositions,[3] counsel for the defendants sought to determine whether sales of Cosamin had occurred before March 31, 1992, the critical date for purposes of the "on sale bar" defense. Predictably, the deponents' testimony was less than what the defendants expected. To test the accuracy of their memories, counsel for the defendants asked whether the witnesses had reviewed any documents before their depositions to assist them in recalling the events relating to the first sale of Cosamin. Although it was acknowledged that documents had been reviewed with counsel for Nutramax during deposition preparation, the witnesses were instructed not to answer all questions designed to discover their identity. The basis

---

1. 35 U.S.C. § 102(b).

2. *See* Memorandum to Counsel dated July 16, 1998 at p. 2, Defendant's Opposition to Interrogatory No. 2 (Paper no. 123).

3. In July, 1998, the defendants deposed the following witnesses, who are the subject of this motion: Edgar J. Sharbaugh, Dr. Robert Henderson, Robert Picard, Todd Henderson, and Jeffrey Fara.

for the instruction not to answer was Nutramax's assertion of the work product rule.[4] Contending that Fed.R.Evid. 612 entitles them to the production of documents used to refresh the recollection of a witness prior to a deposition, the defendants filed a motion to compel the production of the documents used to prepare the Nutramax witnesses. (Paper no. 145). Nutramax has filed an opposition and the Defendants a reply. (Paper nos. 150 and 155, respectively). The documents which are the subject of this dispute were reviewed by me in camera, and a hearing was conducted on December 4, 1998. For the reasons cited below, the motion will be granted, in part, and denied, in part.

## DISCUSSION

■ The issue presented in this case, whether Fed.R.Evid. 612 requires the production of work product materials used to prepare a witness for a deposition, but not used during the deposition itself to refresh the witnesses' recollection, is an important one. It is a rare case today which does not involve the production of documents during discovery, and these documents can be of enormous importance in questioning witnesses about events which may have occurred years earlier. Recognizing the importance of documents in conducting effective deposition discovery, counsel frequently postpone, as was done in this case, deposition discovery until document production has taken place pursuant to Fed.R.Civ.P.

34. *See Lee v. Flagstaff Indus.*, 173 F.R.D. 651, 654–56 (D.Md.1997).

In preparing to defend depositions in cases where substantial document production has taken place, no competent counsel can afford to ignore reviewing with witnesses the documents which relate to critical issues. During a deposition, counsel questioning a witness will seldom fail to ask the witness about what he or she did to prepare for the deposition, and the identity of any documents reviewed for this purpose. Most often, this inquiry is not resisted by counsel defending the deposition, because the documents have already been produced to the opposing counsel. However, where, as here, many thousands of pages of documents have been produced and counsel have analyzed them and selected a population of "critical documents" relevant to case dispositive issues, a deposition question aimed at discovering what documents were reviewed to prepare for a deposition may draw an assertion of the work product doctrine, and an instruction not to answer. In response, the deposing attorney may contend that if the witness used the documents to prepare for the deposition, then work product immunity has been waived, and Fed. R.Evid. 612 requires the production of the documents.[5] As will be seen, there is support in the case law and treatises for both sides of this argument, and it has been recognized that there is a clear conflict between Fed.R.Civ.P. 26(b)(3), which codifies the work product doctrine,[6] and Fed.R.Evid. 612, which has been held to apply during depositions by virtue of Fed.R.Civ.P. 30(c).[7] *Bank*

4. While instructions not to answer questions during depositions are generally improper, a witness may be instructed not to answer a question if the answer would reveal privileged information. *See* Fed.R.Civ.P. 30(d)(1); Local Discovery Guideline 5(d) (D.Md.1997); *Boyd v. University of Maryland Med. Sys.*, 173 F.R.D. 143, 144 (D.Md.1997).

5. Fed.R.Evid. 612 states, relevantly, "if a witness uses a writing to refresh memory for the purpose of testifying either—(1) while testifying, or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness."

6. *See In Re Grand Jury Proceedings*, 33 F.3d 342, 348 (4th Cir.1994) (Rule 26(b)(3) codifies the

work product doctrine); *National Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 983–84 (4th Cir.1992) (same).

7. Fed.R.Civ.P. 30(c) provides that, at depositions, examination and cross-examination of witnesses may proceed as permitted at trial under the provisions of the rules of evidence, except rules 103 (preserving objections) and 615 (sequestration of witnesses). Many courts have held that Fed.R.Evid. 612 is incorporated by rule 30(c), and applies to depositions. *See Sporck v. Peil*, 759 F.2d 312, 317 (3d.Cir.1985); *James Julian v. Raytheon Co.*, 93 F.R.D. 138, 144 (D.Del.1982); *Wheeling–Pittsburgh Steel Corp. v. Underwriters Labs., Inc.*, 81 F.R.D. 8, 10 (N.D.Ill.1978). Learned commentators agree. *See* 8A Wright, Miller & Marcus, Federal Practice and Procedure § 2113 (2d ed.1994). There is contrary authority, however. *See, e.g. Omaha Pub. Power*

*Hapoalim, B.M. v. American Home Assurance Co.,* No. 92 Civ. 3561, 1994 WL 119575, at *5 (S.D.N.Y.1994) (conflict between Fed. R.Civ.P. 26(b)(3) and Fed.R.Evid. 612); *Redvanly v. NYNEX Corp.,* 152 F.R.D. 460, 470 (S.D.N.Y.1993) (same); *Joint Eastern and Southern Dist. Asbestos Litig.,* 119 F.R.D. 4, 5 (E.&S.D.N.Y.1988) (same); 4 Jack B. Weinstein and Margaret A. Berger, Weinstein's Federal Evidence § 612.06[4][b] (2d ed.1997); 28 Wright, Miller & Marcus, Federal Practice and Procedure § 6188 (2d ed.1994); Emerging Problems Under the Federal Rules of Evidence at 186–89 (David A. Schlueter ed., 3d ed.1998); E. Epstein, The Attorney–Client Privilege and the Work–Product Doctrine at 415–22 (3d ed.1997). Although many courts have analyzed this issue, the results have not been consistent, and research fails to reveal any decision from this Court or the Fourth Circuit on point. Because of the obvious importance of the issue raised by this dispute, and the need for the bar to have some guidance, given the frequency with which it arises, it is necessary to analyze the competing rules, and identify an approach for resolving the conflict. The starting point is the work product doctrine.

### 1. The Work Product Doctrine

In the now famous case of *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), the Supreme Court recognized the work product doctrine. The doctrine creates a "protected zone" surrounding an attorney's preparation of a client's case which extends to information the attorney, or her agent, assembles in anticipation of litigation, as well as the deliberative process she uses to separate relevant from irrelevant facts, determine strategy and legal theories. *Id.* at 510–11, 67 S.Ct. 385. Despite its recognition of the importance of the work product doctrine for "an orderly working of our system of legal procedure," the Court acknowledged that the protection it afforded was not absolute, and could be "invaded" upon a showing of adequate reasons to justify production.

*Id.* at 512, 67 S.Ct. 385. Fed.R.Civ.P. 26(b)(3) which, as noted above, codifies the work product doctrine, fleshes it out, and provides, relevantly:

> a party may obtain discovery of documents and tangible things otherwise discoverable ... and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

The Fourth Circuit has explained that this formulation of the doctrine divides work product into two categories, "fact work product," which may be discovered upon a showing of substantial need and inability, without undue hardship, to obtain the substantial equivalent of the materials by other means, and "opinion work product" which it has characterized variously as "absolutely immune" or "nearly absolutely immune" from discovery. *See In re Allen,* 106 F.3d 582, 607 (4th Cir.1997) (opinion work product enjoys "nearly absolute" immunity); *In Re Grand Jury Proceedings,* 33 F.3d 342, 348 (4th Cir. 1994) (opinion work product even "more scrupulously protected" than fact work product); *National Union Fire Ins. Co. v. Murray Sheet Metal Co.,* 967 F.2d 980, 984 (4th Cir.1992) (opinion work product "absolutely immune" from discovery); *In re Martin Marietta Corp.,* 856 F.2d 619, 625 (4th Cir. 1988); *In re John Doe,* 662 F.2d 1073, 1080 (4th Cir.1981), *cert. denied* 455 U.S. 1000, 102

---

*Dist. v. Foster Wheeler Corp.,* 109 F.R.D. 615, 616–17 (D.Neb.1986) (Rule 30(c) does not incorporate Fed.R.Evid. 612, because that rule implies testimony before a judicial officer). However, because depositions are so frequently used at

trial in place of live testimony, *see* Fed.R.Civ.P. 32; Fed.R.Evid. 804(b)(1), the better reasoned conclusion is that Rule 612 does apply at depositions.

S.Ct. 1632, 71 L.Ed.2d 867 (1982) (opinion work product enjoys "nearly absolute" immunity from discovery); *Duplan Corp. v.. Deering Milliken, Inc.*, 540 F.2d 1215, 1217 (4th Cir.1976) (opinion work product "immune" from discovery). While it is clear within this circuit that discovery of opinion work product may be accomplished only in "very rare and extraordinary circumstances," *see Allen*, 106 F.3d. at 607, the protection afforded to opinion work product is not absolute, despite language in some of the above cited opinions suggesting that it is. For example, in *Doe*, the Fourth Circuit recognized the crime-fraud exception to the work product doctrine. *Doe*, 662 F.2d at 1079. In doing so, the court commented that the work product doctrine was not intended to "endow lawyers with an untouchable status," nor was it intended to be a "fringe benefit" for lawyers who abuse the very judicial system the work product rule is intended to protect. *Id.*

Similarly, both the Supreme Court and the Fourth Circuit have recognized that the work product privilege [8] may be waived. In *Unit-*

ed States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), the Supreme Court ruled that by electing to call an investigator as a trial witness, a lawyer representing a defendant in a criminal trial waived the work product privilege with respect to matters [9] covered by his testimony, and, therefore, portions of the investigator's report had to be disclosed to the government. *Id.* at 239–240, 95 S.Ct. 2160. In ruling that a waiver had occurred, the Court stated "where, as here, counsel attempts to make a testimonial use of [work product information] the normal rules of evidence come into play with respect to cross-examination and production of the documents." *Id.* at 239–40 n. 14, 95 S.Ct. 2160. As will be seen, the concept that "testimonial use" of work product information may result in a limited waiver of the privilege is important in resolving the present dispute.

The Fourth Circuit has also recognized that the work product privilege may be waived, but made it clear that this privilege, unlike the attorney client privilege,[10] can only

**8.** Technically, the work product doctrine is not a privilege, but confers upon materials within its scope an immunity from discovery. However, the doctrine has so frequently been referred to as a privilege, that any distinction which once existed is now regarded as largely academic. *See Musselman v. Phillips*, 176 F.R.D. 194, 195 n. 1 (collecting authority) (D.Md.1997). In this opinion, the words "doctrine," "rule," and "privilege" will be used interchangeably to describe work product.

**9.** In *Duplan*, decided shortly after the *Nobles* decision was issued by the Supreme Court, the Fourth Circuit characterized *Nobles* as having held that the use of the defense investigator as a trial witness resulted in subject matter waiver, rather than a more limited waiver restricted to the contents of the report itself. *Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1222 (4th Cir.1976). The Fourth Circuit expressed concern that broad subject matter waiver, as is found in connection with the attorney client privilege, was inappropriate to the work product doctrine, and accordingly interpreted *Nobles* narrowly to apply only to classic "Hickman type witness statements," which are fact, not opinion, work product. *Id.* at 1222–23. It is not entirely clear from a reading of *Nobles* that the Supreme Court ruled that testimonial use of work product resulted in subject matter waiver. In fact, the Court took pains to limit the waiver to "only the portion of the [investigator's] report that related to the testimony the investigator would offer to discredit the [government] identification testimo-

ny." *United States v. Nobles*, 422 U.S. 225, 240, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). Subsequent decisions by the Fourth Circuit have limited *Nobles* to apply only in instances where non-opinion work product is put to a testimonial use. *See, e.g. In re Martin Marietta Corp.*, 856 F.2d 619, 624–25 (4th Cir.1988).

**10.** Although the attorney client privilege and the work product rule have similarities, they are distinct doctrines, which protect different interests. *See Hickman*, 329 U.S. at 508, 67 S.Ct. 385; *Nobles*, 422 U.S. at 238 n. 11, 95 S.Ct. 2160; *Duplan*, 540 F.2d at 1223 n. 7; *Martin Marietta*, 856 F.2d at 624 ( [T]he attorney client privilege is intended to promote communications between lawyer and client by protecting client confidences. "[T]he work product doctrine is broader, designed to promote the needs of the adversary system."); *National Union*, 967 F.2d at 984 n. 4 (recognizing that work product immunity, frequently called a privilege, is not to be confused with the attorney client privilege, which arises from different circumstances and is subject to different protections and waivers than the work product doctrine); E. Epstein, The Attorney–Client Privilege and the Work–Product Doctrine at 402–12 (3d. ed.1997). The difference between the two doctrines is nowhere more apparent than in considering what may effect a waiver. For the attorney client privilege, waiver takes place by any disclosure, intentional, or even inadvertent, which is inconsistent with maintaining the communication as confidential.

be waived or forfeited by actions of the attorney or client which are consistent with a "conscious disregard of the advantage that is otherwise protected by the work product rule." *Doe*, 662 F.2d at 1081. The court therefore reasoned that disclosure of work product to a person with a common interest to the attorney or client does not result in waiver. *Id.* The court stated "[i]n other words, to effect a forfeiture of the work product protection by waiver, disclosure must occur in circumstances in which the attorney cannot reasonably expect to limit the future use of the otherwise protected material." *Id.*

Whether the information involved is fact, as opposed to opinion, work product also affects how easily it can be waived. In *Martin Marietta*, the Fourth Circuit explained in considerable detail the rationale underlying the distinction between fact and opinion work product, and the reason why the latter is entitled to such expansive protection. Because of the importance of the *Martin Marietta* opinion to the resolution of the issue presented in this dispute, it merits discussion at more length.

In *Martin Marietta*, a former employee of that company was charged with mail fraud in connection with a government contract with the Department of Defense ("DOD"). *Martin Marietta*, 856 F.2d at 620. To assist in his defense, he sought to compel production of correspondence and notes from Martin Marietta relating to an administrative settlement agreement between that company and the DOD involving events which were the subject of the charges against the employee. *Id.* at 622. The employee sought the records to make out a defense that he was being made a scapegoat. *Id.* The records included the results of an internal audit, interview notes, transcripts, electronic recordings and correspondence relevant to the settlement agreement. *Id.* The company resisted the disclosure of the documents, asserting the attorney client and work product privileges.

*Id.* The district court ordered the production of certain of the requested documents, but not others. On appeal, the Fourth Circuit addressed the issue of whether the production of work product materials to the DOD and U.S. Attorney's office during the negotiation of the administrative settlement agreement constituted an "implied waiver" of this privilege. *Id.* at 622–26.

The court began its analysis with a consideration of the Supreme Court's decision in Nobles, noting that that decision held that an attempt to make testimonial use of work product resulted in an implied waiver of the privilege. *Id.* at 624. The Fourth Circuit then considered whether the scope of this waiver constituted broad subject matter waiver, or a more narrow waiver, applicable only to the work product materials actually produced. Citing *Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215 (4th Cir.1976), the court stated that *Nobles* established a rule that non-opinion work product put to a testimonial use resulted in subject matter waiver of those materials, and that, accordingly, Martin Marietta had impliedly waived its work product protection for the non-opinion work product matter disclosed to the government. *Id.* at 625. In so doing, the court conceded that even if the production was limited to non-opinion work product, this information "necessarily will be reflective of a counsel's approach," but added "a distinction can be made between non-opinion work product, which may nevertheless be ordered produced if counsel has waived work product protection, and pure mental impressions severable from the underlying data and arguably not subject to subject matter waiver." *Id.* This distinction is of vital importance to the present case, for it illustrates the essential difference between non-opinion and opinion work product.

The court recognized that "the line between opinion and non-opinion work product can be a fine one." *Id.* at 626. However, it emphasized that the essence of what the

*McCafferty's v. Bank of Glen Burnie,* 179 F.R.D. 163, 166–68 (D.Md.1998). However, for work product, waiver does not take place unless a disclosure has been made which is consistent with a conscious disregard of the advantage that is otherwise protected by the doctrine. *Doe,* 662

F.2d at 1081. The work product doctrine, therefore, is both broader and more robust than the attorney client privilege, as it does not appear that it can be waived by inadvertent disclosure in the same way that the attorney client privilege can.

work product doctrine is intended to protect is "pure expressions of legal theory or mental impressions." *Id.* When this information is commingled with traditional "fact" work product, such as witness statements, it can frequently be redacted from the underlying information. Thus, while it is generally helpful to use labels like "opinion" and "non-opinion" work product when analyzing work product issues, the helpfulness of this taxonomy diminishes at the point where the distinction between the two is blurred. As the court readily acknowledged, even the disclosure of non-opinion work product in its purest form will reveal, to some extent, "counsel's approach." *Id.* at 625. For example, the very process of deciding what fact witnesses to interview, the questions to be asked, and the recording of their responses offers insight into how the attorney taking or directing the taking of the statements views the case. The same can be said about any other type of non-opinion work product. Nevertheless, the importance of the Fourth Circuit's decision in *Martin Marietta* is its recognition that it is not the labeling of work product that is significant, but, instead, the protection of the core values of the work product doctrine. Simply put, the work product doctrine is intended to afford "nearly absolute" protection against disclosure of "pure mental impressions or legal theory" of counsel, and if this can be accomplished by severing such information from the underlying data, production can be ordered if an implied waiver by testimonial use has occurred. *Id.* at 625–26.[11]

Secondly, it must be remembered that the Fourth Circuit's distinction between the waiver of opinion work product and fact work product under the doctrine of implied waiver by testimonial use was prompted by its reading of *Nobles* to require subject matter waiver for the matters produced. However, as stated above at note 9, it is not so clear from a reading of the Supreme Court's decision in *Nobles* that true subject matter waiver is mandated by the testimonial waiver rule. Indeed, the Court took pains to note its approval of the limited disclosure which had been ordered by the district court, stating:

The court authorized no general fishing expedition' into the defense files or indeed even into the defense investigator's report. Rather, its considered ruling was quite limited in scope, opening to prosecution scrutiny only the portion of the report that related to the testimony the investigator would offer to discredit the witness' identification testimony.

*Nobles,* 422 U.S. at 240, 95 S.Ct. 2160 (internal citations omitted).

Finally, despite the Fourth Circuit's holding that courts are to accord opinion work product "great protection," it did not hold that such protection was absolute, stating:

While certainly actual disclosure of pure mental impressions may be deemed waiver, and while conceivably there may be indirect waiver in extreme circumstances, we think generally such work product is not subject to discovery. While, as we recognized in *Duplan,* the Supreme Court's reasoning in *Nobles* necessarily implies that the privilege derived from the work product doctrine is not in all cases absolute, the plain language of Fed. R.Civ.P. 26(b)(3) suggests especial protection for opinion work product.

*Martin Marietta,* 856 F.2d at 626 (internal citations omitted). In sum, a careful reading of *Martin Marietta* permits the conclusion that if testimonial use has been made of work product information, a limited, non-subject matter implied waiver has occurred as to the materials put to that use, provided the disclosure of those materials would not reveal "core" opinion work product, namely pure expressions of attorney mental impressions, opinions or legal theory.

The final Fourth Circuit opinion which must be considered with respect to the work product doctrine is *In re Allen,* 106 F.3d 582 (4th Cir.1997). In *Allen,* the Fourth Circuit, in a lengthy opinion, addressed whether information covered by the attorney client privilege and the work product doctrine was subject to discovery in a civil case. The most significant part of this case, for purposes of the present dispute, came at the very end of

11. *See Martin Marietta,* 856 F.2d at 626 n. 2, (discussing how redaction of pure mental impressions or legal theory could be made to work product before it is produced).

the opinion, when the court considered whether an attorney's selection and collection of certain records of her client, which were themselves discoverable, constituted work product. The court stated:

> Yet, just as Allen prepared the interview notes and summaries in anticipation of litigation, she also chose and arranged these records in anticipation of litigation. This choice and arrangement constitutes opinion work product because Allen's selection and compilation of these particular documents reveals her thought processes and theories regarding this litigation.

*Allen*, 106 F.3d at 608. It is noteworthy that, although *Allen* did not address the issue presented in this case,[12] it did cite as authority for its conclusion that documents selected and compiled by counsel constitute opinion work product two cases which addressed the very issue raised in this case, the applicability of Fed.R.Evid. 612 to depositions.[13] More tellingly, the *Allen* court did not cite *Martin Marietta*, which contains the most detailed discussion by the Fourth Circuit of the distinction between fact and opinion work product.

At first blush, reading *Allen* and *Martin Marietta* together could lead to the conclusion that if documents otherwise discoverable in litigation are selected and compiled by an attorney in anticipation of litigation, they constitute opinion work product and, therefore, are protected from disclosure, even if put to a testimonial use, because of the court's ruling in *Martin Marietta* that testimonial use of work product information only results in implied waiver of non-opinion work product. However, to reach such a result would exalt form over substance for several important reasons. First, as stated in *Martin Marietta*, the dividing line between fact and opinion work product is not always easily discernable, *see Martin Marietta*, 856 F.2d at 626, and the mere selection of otherwise discoverable documents by counsel falls closer to fact work product on the continuum than it does to core opinion work product. Second, the disclosure of even "pure" fact work product will necessarily disclose information about an attorney's approach to the litigation of the case, so it is never possible to completely insulate an attorney's thought process from discovery when any form of work product is disclosed. *See id.* at 625. Third, what the work product doctrine is fundamentally designed to protect against is disclosure of "pure" mental impressions or opinions of counsel. *See id.* Disclosure of opinion work product consisting of records of a party to the litigation which are themselves subject to discovery, and which do not contain "pure" expressions of counsel's mental impressions or theories, does not do violence to the policy underlying the work product doctrine, particularly if those documents already have been put to a testimonial use by the party whose attorney selected and compiled them. Fourth, neither *Martin Marietta, Allen*, nor any other Fourth Circuit opinion, has addressed the exact question presented in this case, and therefore, did not have to reconcile the conflict which exists between the important policies which underlie the work product doc-

---

12. The First Circuit has considered the issue of whether an attorney's selection of certain documents from a larger population of discoverable documents is opinion work product, and, therefore, shielded from disclosure, even if used to prepare witnesses for depositions. In an opinion which is critical of the reasoning used in *Sporck*, one of the cases relied on in *Allen*, the First Circuit concluded "[the reasoning used in *Sporck*], we suggest, is flawed because it assumes that the relevatory nature of the sought-after information is, in itself, sufficient to cloak the information with the heightened protection of opinion work product. That is simply not the case; much depends on whether the fruits of the screening would soon be revealed in any event." *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1018, (1st Cir.1988).

13. These cases are: *James Julian v. Raytheon Co.*, 93 F.R.D. 138 (D.Del.1982) and *Sporck v. Peil*, 759 F.2d 312 (3d Cir.1985). In neither case did the court hold that the work product doctrine absolutely shielded documents selected and compiled by an attorney from disclosure if Fed. R.Evid. 612 was otherwise applicable. Indeed, in *Julian*, the court ordered the production of the notebook of records selected and compiled by counsel. *See Julian*, 93 F.R.D. at 146. In *Sporck*, the court did not order disclosure of such documents, not because it concluded they were absolutely immune from discovery, but instead, because it concluded that the party seeking disclosure of these documents had failed to lay a proper foundation to trigger application of Evidence Rule 612. *See Sporck*, 759 F.2d at 317–18.

trine and Evidence Rule 612. And, finally, neither the *Martin Marietta* nor the *Allen* court held that the protection afforded to opinion work product was absolute. *See Martin Marietta*, 856 F.2d at 625–26; *Allen*, 106 F.3d at 607 ("opinion work product 'enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances' ").[14]

In my view, there is room within the interstitial space between *Martin Marietta* and *Allen* for the following holding: If otherwise discoverable documents, which do not contain pure expressions of legal theories, mental impressions, conclusions or opinions of counsel, are assembled by counsel, and are put to a testimonial use in the litigation, then an implied limited waiver of the work product doctrine takes place, and the documents themselves, not their broad subject matter, are discoverable. It remains to be seen whether use of such records by an attorney to prepare witnesses for depositions constitutes a "testimonial" use of the records, sufficient to trigger such waiver. The answer to this question lies in Fed.R.Evid. 612.

### 2. *FedR.Evid. 612*

Fed.R.Evid. 612 provides, relevantly:

if a witness uses a writing to refresh memory for the purpose of testifying either—(1) while testifying, or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness.

The rule in its present form marks a substantial departure from the common law and the original version of the rules of evidence, which limited production of documents used to refresh recollection to those actually used while the witness was testifying.[15] *See James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 144–44 (D.Del.1982); *Wheeling–Pittsburgh Steel Corp. v. Underwriters Labs., Inc.*, 81 F.R.D. 8, 10 (N.D.Ill.1978); Fed. R.Evid. 612 advisory committee's note.

As stated above, at note 7, many courts and commentators have concluded that Fed. R.Evid. 612 is applicable to depositions, through Fed.R.Civ.P. 30(c). It also has been noted that the legislative history of Rule 612 is somewhat ambiguous, because the rule itself is silent with respect to whether it applies to work product materials used to refresh recollection. *See James Julian*, 93 F.R.D. at 145, *Bank Hapoalim*, 1994 WL 119575, at *5. It does appear, however, as though the House Committee on the Judiciary did not intend the rule to operate in such a way that it would allow a "fishing expedition" into the documents a witness may have referred to in preparing for trial, nor did that committee intend for it to bar "the assertion of a privilege with respect to writings used by a witness to refresh his memory." H.Rep. No. 650, 93rd Cong., 1st Sess. (1973), *reprinted in* 1974 U.S.C.C.A.N. 7075, 7086.

Because of the apparent conflict between Evidence Rule 612 and the work product doctrine, as codified in Fed.R.Civ.P. 26(b)(3),

---

14. In *Berkey Photo, Inc. v. Eastman Kodak Co.*, 74 F.R.D. 613 (S.D.N.Y.1977), one of the first, and most often cited, cases to address the issue presented here, the court was faced with reconciling decisions, such as *Martin Marietta* and *Allen*, which held that opinion work product was entitled to a nearly "absolute immunity from discovery." The court observed, in language equally relevant here, "[t]he answer [to the question of how absolute or qualified the work product privilege is] will vary, of course, with the nature of the materials sought from the lawyer's files. Starting with *Hickman v. Taylor*, and extending to now, the authoritative pronouncements come close to, or arrive at, an absolute immunity, from discovery of the attorney's 'mental impressions, conclusions, opinions, or legal theories'. Again, however, the sweeping language of the cited authorities has never been challenged by an instance where such immunized materials have been deliberately employed to prepare and thus, very possibly, to influence and shape testimony, with the anticipation that these efforts should remain forever unknowable and undiscoverable. It ought not to be comfortably supposed that a claim that extreme must necessarily be sustained." *Id.* at 616–17 (internal citations omitted).

15. The Maryland version of Rule 612, Rule 5–612, adopts the original formulation of this rule, allowing access only to documents actually used to refresh recollection while testifying. *See, e.g.* L. McLain, Maryland Rules of Evidence, Rule 5–612 commentary § 2.612.3 at 164 (1994).

courts have looked for various ways to harmonize the two rules. *See Joint Eastern and Southern Dist. Asbestos Litig.*, 119 F.R.D. 4 at 5, *Redvanly v. NYNEX Corp.*, 152 F.R.D. 460, 470 (S.D.N.Y.1993). The process has produced inconsistent results, with some courts concluding that work product materials which were reviewed by a witness prior to being deposed were subject to disclosure under Rule 612,[16] and others concluding that they were not.[17]

■ As a threshold matter, three foundational elements must be met before Rule 612 is applicable with respect to documents reviewed by a witness to prepare for a deposition: (1) a witness must use a writing to refresh his or her memory; (2) for the purpose of testifying; and (3) the court must determine that, in the interest of justice, the adverse party is entitled to see the writing. Fed.R.Evid. 612; *see Sporck v. Peil*, 759 F.2d 312, 317 (3d Cir.1985); *Butler Mfg. Co., Inc. v. Americold Corp.*, 148 F.R.D. 275, 278 (D.Kan.1993); 4 Jack B. Weinstein and Margaret A. Berger, Weinstein's Federal Evidence § 612.07[1] (2d ed.1997). The first element insures that the writing is relevant to an attempt to test the credibility of the deponent. The second element safeguards against use of Rule 612 "as a pretext for wholesale exploration of an opposing party's files" and insures "that access is limited only to those writings which may fairly be said in part to have an impact upon the testimony of the witness," because only writings which actually influenced a witness's testimony are of utility in impeachment and cross-examination. *Sporck*, 759 F.2d at 317–18; *see Berkey Photo*, 74 F.R.D. at 615 (for Rule 612 to apply it must be shown "at least to a strongly arguable degree" that documents had impact on the testimony of the witness); *Omaha Pub. Power Dist.*, 109 F.R.D. at 616 (same); *Timm v. Mead Corp.*, No. 91 C. 5648, 1992 WL 32280, at *4 (same); *Bank Hapoalim*, 1994 WL 119575, at *5 (same); Fed.R.Evid. 612 advisory committee's note. If the first two elements are not met, then the inquiry ends, as Rule 612 is inapplicable. However, if the first two elements are met, then it safely may be concluded that the documents have been put to a testimonial use for purposes of work product doctrine analysis. Whether disclosure is required then turns on the third element of Rule 612.

■ The third element requires the court to apply a balancing test designed to weigh the policies underlying the work product doctrine against the need for disclosure to promote effective cross-examination and impeachment. *See James Julian*, 93 F.R.D. at 145 ("It would thus appear that [in enacting Rule 612], Congress left the task of striking a balance between the competing interests of full disclosure and the maintenance of confidentiality for case by case determination."); *Joint Eastern and Southern District Asbestos Litig.*, 119 F.R.D. at 5 (the "interests of justice" standard of Rule 612 "incorporates as part of the balancing analysis the protection afforded by the work product doctrine") (internal citations omitted); *Redvanly*, 152 F.R.D. at 470 (same); *Bank Hapoalim*, 1994 WL 119575, at * 6 (courts should strictly construe the requirements of Rule 612, and balance the competing interests between that rule and the work product doctrine).

■ At either end of the spectrum, it is easy to identify the goal to be served by the balancing test. On the one hand, a court

---

16. *See, e.g. Wheeling–Pittsburgh Steel v. Underwriters Labs., Inc.*, 81 F.R.D. 8 (N.D.Ill.1978); *James Julian v. Raytheon Co.*, 93 F.R.D. 138 (D.Del.1982); *Omaha Public Power Dist. v. Foster Wheeler Corp.*, 109 F.R.D. 615 (D.Neb.1986); *Joint Eastern and Southern Dist. Asbestos Litig.*, 119 F.R.D. 4 (E.&S.D.N.Y.1988); *Redvanly v. NYNEX Corp.*, 152 F.R.D. 460 (S.D.N.Y.1993); *Bank Hapoalim v. American Home Assurance Co.*, No. 92 CV 3561, 1994 WL 119575 (S.D.N.Y. 1994); *Ehrlich v. Howe*, 848 F.Supp. 482 (S.D.N.Y.1994); *Audiotext Communications Network, Inc. v. U.S. Telecom, Inc.*, 164 F.R.D. 250 (D.Kan.1996).

17. *See, e.g. Sporck v. Peil*, 759 F.2d 312 (3d Cir.1985); *Berkey Photo v. Eastman Kodak Co.*, 74 F.R.D. 613, (S.D.N.Y.1977); *Derderian v. Polaroid Corp.*, 121 F.R.D. 13 (D.Mass.1988); *Baker v. CNA Insurance*, 123 F.R.D. 322 (D.Mont.1988); *Timm v. Mead Corp.*, No. 91 CV 5648, 1992 WL 32280 (N.D.Ill.1992), *Butler Mfg. Co. Inc. v. Americold Corp.*, 148 F.R.D. 275 (D.Kan.1993); *Arkwright Mut. Ins. Co. v. National Union Fire Ins. Co.*, No. 90 CV 7811, 1994 WL 510043 (S.D.N.Y. 1994).

must protect against disclosure of an opposing attorney's deliberative process, legal theories, case analysis, and trial preparation. On the other, courts must not allow attorneys to "exceed decent limits of preparation." *Berkey Photo,* 74 F.R.D. at 616–17. Expressed somewhat differently, the work product doctrine protects legitimate efforts to prepare a case, which include preparation of witnesses for deposition and trial testimony. These efforts do not extend, however, to manufacturing favorable testimony, or concealing unfavorable testimony.[18] In balancing the competing interests between disclosure and the work product rule at the third step of Rule 612 analysis, the following factors should be considered.

(1) The status of the witness. Most witnesses testify about facts within their personal knowledge, as required by Fed.R.Evid. 602. Others, however, are not so restricted. Expert witnesses, for example, may base their opinions on information supplied by others, if reliable. Fed.R.Evid. 703. Similarly, Fed.R.Civ.P. 30(b)(6) allows a party to designate a witness to testify on its behalf with respect to specified subjects. The testimony of such witnesses also is not limited to matters within their personal knowledge, but extends to "matters known or reasonably available to" the party designating the witness. Rule 30(b)(6). There is a greater need to know what materials were reviewed by expert and designee witnesses in preparation for deposition since the substance of their testimony may be based on sources beyond personal knowledge.[19] (2) The nature of the issue in dispute. Whether a witness is testifying generally about the transactions which are the subject of the litigation, or more precisely about a subset of facts which relate to a case dispositive issue (such as a statute of limitations defense, or, as in this case, the on sale bar defense) may affect the need to know what materials were reviewed to prepare for deposition. (3)

When the events took place. Whether the events about which the witness will testify took place recently, or years ago, affects the need to know what materials were reviewed. The ability of a witness to perceive, remember, and relate events is fair game for cross examination, and a deposing attorney has a legitimate need to know whether the witness is testifying from present memory, unaided by any review of extrinsic information, present memory "refreshed" by reference to other materials, or really has no present memory at all, and can only "testify" as to what is memorialized in writings prepared by the witness or others. The greater the passage of time since the events about which the witness will testify, the more likely that the witness needed to refresh his or her recollection to prepare for testimony. (4) When the documents were reviewed. As noted, Fed. R.Evid. 612 only applies to use of documents to refresh recollection for purposes of providing testimony. Thus, review of documents for purposes other than deposition or trial testimony is exempt from the rule. In complex cases, or cases involving many documents, counsel may have many occasions to review with clients documents which relate to the issues in the litigation, such as preparation of pleadings or motions, responding to Fed.R.Civ.P. 34 document production requests, and development of case strategy. Such review is not for purposes of providing testimony. Accordingly, if a witness reviewed documents months before a deposition, for a purpose other than to prepare to testify, disclosure of the documents reviewed should not be required in response to a Rule 612 demand. The nearer the review of documents to the date of the deposition may affect whether the court concludes that the purpose was to prepare for testimony. (5) The number of documents reviewed. Whether a witness reviewed hundreds of documents, as opposed to a few critical ones,

---

**18.** *See Geders v. United States,* 425 U.S. 80, 90 n. 3, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) ("An attorney must respect the important ethical distinction between discussing testimony and seeking improperly to influence it."); Maryland Rules of Professional Conduct Rule 3.4(b)("A lawyer shall not: falsify evidence, counsel or assist a witness to testify falsely.").

**19.** *See, e.g. Musselman v. Phillips,* 176 F.R.D. 194 (D.Md.1997) (ordering disclosure of attorney opinion work product sent to expert witness designated to testify at trial, and considered by that expert in forming opinions).

may affect the decision whether to order the disclosure of work product materials in response to a Rule 612 demand. If an attorney has culled through thousands of documents to identify a population of several hundred which are most relevant to the litigation, and the witness reviews these documents to prepare for the deposition, a court may be less inclined to order the production of such work product than if the witness reviewed a single document, or very few documents, selected by the attorney which relate to a critical issue in the case.[20] (6) Whether the witness prepared the document(s) reviewed. If the witness prepared the document (s) reviewed in preparation for the deposition, particularly if they were prepared in the ordinary course of the events underlying the dispute, and not in anticipation of litigation, there may be a greater need for disclosure than if the witness reviewed documents prepared by others.[21] (7) Whether the documents reviewed contain, in whole or part, "pure" attorney work product, such as discussion of case strategy, theories or mental impressions, which would require redaction or favor nondisclosure. (8) Whether the documents reviewed previously have been disclosed to the party taking the deposition, as part of a Fed.R.Civ.P. 34 document production, or otherwise. It may be argued that, if the deposing attorney already has received the documents during the litigation, there is no reason to order their production a second time, for the only purpose this would serve would be to disclose, indirectly, the mental impressions of the attorney who selected the documents to review with the witness. However, the forcefulness of this argument may diminish if the documents previously produced are so voluminous or technical that the party receiving them cannot readily be expected to grasp their signifi-

cance. Finding the critical documents in a population of thousands may be like looking for a needle in a haystack, even with the aid of modern technology. (9) Whether there are credible concerns regarding manipulation, concealment or destruction of evidence. If the court believes that there may have been inappropriate conduct affecting either testimonial or documentary evidence in the case, and the documents demanded under Rule 612 relate to these concerns, then disclosure may be required.

The foregoing list is illustrative, not exhaustive, and the weight to be assigned to each factor may vary on a case-by-case basis. To make the determinations required by these factors may, unavoidably, require in camera review, a process favored by the learned commentators who have addressed this issue.[22] With the above principles in mind, the witnesses and documents at issue in this dispute may now be considered.

### 3. Analysis

Five witnesses are implicated by the pending motion: Edgar J. Sharbaugh, Dr. Robert Henderson, Robert Picard, Todd Henderson, and Jeffrey Fara. (Defendants motion to compel, Paper no. 145, at 2–7). Sharbaugh is co-owner of Nutramax, and vice-president of marketing. He was deposed as a designee of Nutramax, pursuant to Fed.R.Civ.P. 30(b)(6) regarding a number of subjects, including the creation, retention and destruction of documents, the existence of records regarding purchase and sales transactions of the plaintiff, as well as product identification and sales information of the company between 1991 and 1993. *Id.* at 2–3. Dr. Henderson is a co-owner and the president of Nutramax. He is the inventor of the two patents which are the subject of this litigation, and was

---

**20.** The opposite result may also be reached. It is possible that the selection of a single, or very few documents, by an attorney out of a much larger population, could be viewed by the court as more revealing of the attorney's deliberative process than the selection of a few hundred out of thousands.

**21.** 4 Jack B. Weinstein and Margaret A. Berger, Weinstein's Federal Evidence § 612.06[3] at 612–35 (2d ed.1997) (waiver of work product protection may be found where a witness has

consulted a writing embodying his or her own communication to counsel, and the testimony at the deposition discloses a significant amount of the communication).

**22.** 4 Jack B. Weinstein and Margaret A. Berger, Weinstein's Federal Evidence § 612.06[4][d][I] at 612–38 (2d ed.1997); 28 Wright, Miller & Marcus, Federal Practice and Procedure § 6189 (2d ed.1994) (refusal of court to conduct in camera review is error).

deposed as a rule 30(b)(6) designee regarding the first combination of ingredients of Cosamin, the subject of the patents, as well as the first purchase dates of the ingredients for Cosamin, and its first sale and use. *Id.* at 3. Picard is a shipping clerk for the plaintiff, and apparently was not deposed as a designee witness. *Id.* at 4. Todd Henderson, Dr. Henderson's son, is a co-owner of Nutramax, and a vice-president, in charge of its veterinary science division. He signed the plaintiff's interrogatory answers, and testified as a fact witness, not as a Rule 30(b)(6) designee. *Id.* The final witness, Jeffrey Fara, is a longstanding friend of Dr. Henderson, who assertedly purchased Cosamin on March 27, 1992, just days before the critical date of March 31, 1992. *Id.* at 6–7. Excerpts from the depositions of Sharbaugh, Dr. Henderson, and Picard were provided as attachments to the plaintiff's motion. None were provided with respect to Todd Henderson and Jeffrey Fara.

Pursuant to my order dated October 22, 1998, (Paper no. 158), the plaintiffs provided me with a notebook containing the documents used to prepare the foregoing witnesses for their depositions. I reviewed these documents in camera. They remain under seal, and the defendants have not seen them. The notebook contains 41 documents. Plaintiffs further provided a helpful chart listing the documents used to prepare each of the witnesses. Eleven were used to prepare Sharbaugh, 32 to prepare Dr. Henderson, five for Picard, two for Todd Henderson, and nine for Fara. With the exception of document no. 23, for which the attorney client privilege was asserted, plaintiffs state that all of the documents contained in the notebook have been produced to the defendants during discovery.[23] (Paper no. 150, at p. 7).

■ As noted, Sharbaugh testified as a Rule 30(b)(6) designee of Nutramax. The subject of his testimony included facts directly at the center of the on sale bar defense asserted by the defendants. Further, he is the person who was responsible for the destruction of 4–5 file cabinets of records earlier this year.[24] While the plaintiff asserts that the destruction of records, both in 1994 and 1998, was innocent, the defendants are skeptical. During his deposition, Sharbaugh was asked by defendants whether he had reviewed any documents to prepare for his deposition. He testified that he reviewed several documents in advance of the deposition, in the presence of Nutramax's attorneys. Some of the documents he reviewed he selected, others were selected by the at-

---

**23.** During the hearing held on December 4, 1998, counsel for the defendants acknowledged that the defendants do, at present, have all of the disputed documents, except no. 23, but asserted that some of these documents, relating to Dr. Bucci, a non-party witness, were not provided to the defendants until after the Sharbaugh and Dr. Henderson depositions. Because I am ordering the production of the documents used to prepare both of these witnesses, (except for document no. 23), as well as the limited reopening of their depositions, it is not necessary for me to separately consider the significance of the fact that some of the "Bucci documents" were not produced until after Dr. Henderson's deposition. However, to the extent that documents were produced by the defendants after Dr. Henderson's deposition which are of potentially great weight with respect to the "on sale bar" defense, and, assuming that they were among the documents used to prepare Dr. Henderson, the production of such documents after Dr. Henderson's deposition would, independent of any Rule 612 analysis, warrant reopening his deposition to permit further inquiry in light of these documents.

**24.** From my review of the limited excerpts from Sharbaugh's deposition which were provided as exhibits, it appears that in 1994 he ordered the

destruction of certain Nutramax records, which included most of the documents which existed regarding 1992. Thereafter, in January of 1998, Sharbaugh was dispatched by Dr. Henderson to look for records from 1992, in response to Rule 34 discovery requests initiated by the defendants. Some 1992 records were located, evidently because they had been overlooked when the records were thrown away in 1994. In the process, however, Sharbaugh came upon 4–5 file cabinets of records which he reviewed, and thereafter ordered destroyed. Dr. Henderson's son delivered the documents, about 12 litigation boxes worth, to Sharbaugh's home, which was being remodeled, and Sharbaugh threw them into a dumpster being used by the contractor. Sharbaugh stated that the documents he threw away did not contain any documents from 1992, but only from the 1980's. He did testify, however, that the plaintiff was aware of the significance of the March 31, 1992 date to the litigation, and he testified that no steps had been taken to preserve documents relating to this date. (Paper no. 145, Ex. A at 284–98, Sharbaugh deposition, July 23, 1998; Ex. B at 192–199, Sharbaugh deposition, July 24, 1998).

torneys. He acknowledged that some of the documents he reviewed did refresh his recollection, in particular a chart concerning glucosamine. Although defendants vigorously examined Sharbaugh about the number and content of the documents he reviewed, he repeatedly was instructed not to answer these questions by plaintiff's attorneys, who asserted the attorney client privilege and work product doctrine. (Paper no. 145, Ex. D at 16–17, 37–38, 121, Sharbaugh deposition, July 23, 1998; Ex. A at 416–20, Sharbaugh deposition, July 24, 1998).

It is clear that defendants have established that Sharbaugh used writings to refresh his memory prior to his deposition, for the purpose of testifying. They have, accordingly, demonstrated the first two elements of Rule 612, and, concomitantly, for purposes of work product doctrine analysis, that the documents selected by plaintiff's attorneys for him to review were used by Sharbaugh for a testimonial purpose. Whether they must be disclosed, as demanded by the defendants, turns on the third element of Rule 612, the balancing test, and an evaluation of the factors identified above.

Sharbaugh was a Rule 30(b)(6) designee, and therefore his testimony was not limited to facts personally known to him, but also to those reasonably available to the plaintiff. Fed.R.Civ.P. 30(b)(6). Because of this, the defendants had a heightened need to discover the factual basis for his testimony. This was underscored by the fact that he testified as to issues which are potentially case determinative, and events which took place more than five years ago. Sharbaugh's ability to perceive, remember and relate these events, which are highly relevant to his credibility, are legitimate areas for inquiry by the defen-

dants, particularly in light of his direct involvement in the destruction of documents in 1994 and 1998.[25]

Sharbaugh only reviewed eleven documents, some selected by him, and others by plaintiff's attorneys,[26] and all of them are apparently now in the defendants' possession. In other circumstances, this factor would militate against disclosure. However, given the fact that thousands, perhaps hundreds of thousands, of documents have been produced for inspection during discovery, it would be difficult for the defendants to easily determine a population of documents which likely would be relevant to Sharbaugh's testimony. From my review of the documents in camera, it is clear that none contain "pure" opinion attorney work product, such as discussion of case strategy, litigation theories or mental impressions. Finally, as noted above, there is no dispute that documents have been destroyed, both before and after the commencement of this litigation, which relate to important issues in the case. Sharbaugh is at the center of the dispute regarding these documents, and much will hinge on his credibility. While the outcome of this controversy cannot now be predicted, it is undeniably significant. In light of all of these circumstances, I conclude that use of the documents selected by counsel to prepare Sharbaugh for his deposition constituted a testimonial use of these documents which resulted in a limited, implied waiver of the attorney work product doctrine as to them. I further find that the first two elements of Rule 612 have been met as to him, and that, having considered the balancing factors discussed above, it is necessary in the interest of justice for the eleven documents used to prepare Sharbaugh be produced to the defendants.[27]

**25.** From the limited information provided to me, I am unable to draw any conclusions about whether the destruction of documents was innocent, as plaintiff asserts, or sinister, as the defendants contend. *See supra* note 24.

**26.** Assuming those eleven documents had been selected by Sharbaugh, with plaintiff's attorneys taking no part in that selection, such a situation would not implicate the work product doctrine, and therefore, disclosure would be warranted based solely on Fed.R.Evid. 612.

**27.** Plaintiff also asserted the attorney client privilege as an independent basis for withholding the documents from the defendants. From my in camera review, it is apparent that the plaintiff has not met its burden of establishing the applicability of this privilege, with the exception of document no. 23. *See Hawkins v. Stables,* 148 F.3d 379, 383 (4th Cir.1998) (holding that the party asserting a privilege has the burden of proving its applicability and non-waiver). Indeed, from the focus of the briefing submitted by the parties, it is clear that the only potentially applicable theory to shield the documents from

Dr. Henderson also testified as a Rule 30(b)(6) designee about facts relevant to the on sale bar defense. Significantly, he acknowledged that "a lot of things could have happened" with respect to when Cosamin was first offered for sale, and that he "flat out" did not know if he offered it for sale before March 31, 1992. He also admitted that it was possible that there were sales of Cosamin prior to that critical date. (Paper No. 145, Ex. C at 299–310, 409–10, 454, Dr. Henderson deposition, July 28, 1998).

■ Dr. Henderson also acknowledged that he reviewed documents in preparation for his deposition, all in the presence of counsel. Asked more specifically whether he reviewed any documents which refreshed his recollection of events during the 1992 time frame, he responded "I didn't have any documents." (Paper No. 145, Ex. D at 69–70, Dr. Henderson deposition, July 28, 1998). While I acknowledge that I have only been given a small sampling of the full text of this deposition, it is clear from my review of the documents reviewed by Dr. Henderson that he either did not understand this question, or he was answering in an evasive and incomplete manner, which is prohibited by Fed.R.Civ.P. 37(a)(3). The vast majority of the documents he reviewed prior to his deposition were dated 1992. Plaintiff appears to argue that unless the deponent admits that he or she reviewed documents to prepare for deposition, and that this review in fact enhanced the witness' ability to recall, the first two elements of Rule 612 are not met. I reject this argument for the obvious reason that, if correct, a witness could always avoid the reach of this rule by simply denying that the documents refreshed his or her recollection, regardless of whether this was true. As with proof of any fact, establishing that the first two elements of Rule 612 have been met may be accomplished by direct proof (an admission by the deponent that review of documents aided memory) or circumstantial proof, from which an inference may be drawn whether such assistance was received. From my reading of Dr. Henderson's testimony, as well as the documents he reviewed, there is no question in my mind that he did review

documents in preparation for his deposition, and that this review unavoidably enhanced his recollection of events which took place more than five years earlier. Accordingly, I conclude without hesitation that a testimonial use was made of these documents, and that the first two elements of Rule 612 have been established. Whether they must be disclosed again turns on the third element of that rule, the balancing of factors.

Like Sharbaugh, Dr. Henderson testified as a rule 30(b)(6) designee, about a critical issue, the first use and sale of Cosamin. Although his personal knowledge as the inventor of this product and, presumably, a significant actor in the events surrounding the first use and sale, is of great importance, his testimony as a designee required him to provide information based on information reasonably available to the plaintiff. Fed. R.Civ.P. 30(b)(6). Dr. Henderson admitted that it was possible that the first use and sale of Cosamin occurred before March 31, 1992, and that he "flat out" did not know if it was offered for sale before that date. In such circumstances, the ability to have questioned him in more detail about the events of that time using documents prepared in the ordinary course of business was of unquestionable importance to defendants. Combined with the fact that the overwhelming majority of the plaintiff's own records relating to that time apparently have been destroyed by Nutramax, the defendant's need for access to the documents which Dr. Henderson reviewed for purposes of testing his memory cannot be understated. It is all too easy for a witness to testify that his recollection is vague, as did Dr. Henderson, and to give the appearance of candor by acknowledging the possibility of the occurrence of an important event, all the while maintaining that it cannot be conceded that it actually did. Rigorous cross examination is needed to test such self-serving statements by focused, analytical questioning, using contemporaneously prepared documents, if available, to test the witness's assertions. Without the use of such documents, or others which might have assisted if they had not been destroyed by the plaintiff, the defendants were at a clear

discovery is the work product doctrine. *See*

Plaintiff's opposition, Paper no. 150, at p. 7–8.

disadvantage. Additionally, from my review of the documents in camera, it is clear that none contain "pure" opinion attorney work product, such as discussion of case strategy, litigation theories or mental impressions. Therefore, the first four, seventh and ninth factors overwhelmingly militate in favor of disclosure.

The remaining factors are either neutral, or do not sufficiently undermine the argument for disclosure to change the outcome of the analysis. With the exception of document 23, which clearly is exempt from disclosure under the attorney client privilege, none of the documents reviewed by Dr. Henderson contain "pure" opinion work product. Accordingly, I conclude that with respect to the 32 documents used to prepare Dr. Henderson for his deposition, all except no. 23 are discoverable. Having been put to a testimonial use, a limited, implied waiver of work product immunity has occurred, and the first two elements of Rule 612 have been met. The third element of that rule, the balancing of factors, also strongly supports disclosure of these documents in the interests of justice.

■ Robert Picard testified, apparently as a fact witness, and not a rule 30(b)(6) designee.[28] He admitted meeting with counsel for the plaintiff within weeks of his deposition to prepare for it, and reviewing documents, although the details regarding this review were not disclosed because counsel for Nutramax instructed him not to answer these questions. When asked whether his review of the documents refreshed his recollection with respect to the events surrounding them, he stated that it did not. (Paper No. 145, Ex. E at 89–93, 159–60, Picard deposition, July 29, 1998). Having read the five documents which Picard did review, it is understandable why he denied that they assisted in his recollection of the events surrounding the first sale of Cosamin. Accordingly, I conclude that the first element of Rule 612 has not been established, making the documents not subject to discovery. Nevertheless, were

I to assume, arguendo, that the first two elements have been established, I would reach the same result, applying the balancing of factors as part of the third step. This is because Picard did not testify as a designee, so there is no enhanced need to learn whether his testimony is derived from sources other than his personal recollection, as his testimony at trial will be restricted to facts of which he has personal knowledge. Fed. R.Evid. 602. Second, the small number of documents he reviewed, and their evident inutility in refreshing his recollection, means that they can contribute little to meaningful efforts to test his memory. In sum, my in camera reading of the records which Picard reviewed does not lead me to the conclusion that their disclosure is necessary, in the interests of justice. In such circumstances, the balancing of interests favors a conclusion that there has been no waiver of the work product doctrine.

Todd Henderson was deposed, evidently also as a non-designee witness. Defendants have not provided me with any excerpts from his testimony, and only two documents were used in preparing him for his testimony. It is the duty of the court to determine, preliminarily, whether the foundational elements of Rule 612 have been met, see Fed.R.Evid. 104(a), and in doing so, the rules of evidence, except for privilege, are not applicable. Fed. R.Evid. 1101(d)(1). Nevertheless, I cannot make the threshold determination in a factual vacuum. Accordingly, I conclude that, as for Todd Henderson, the defendants have failed to establish any of the three foundational elements of Rule 612. The motion to compel the documents he reviewed will therefore be denied.

Finally, the defendants seek to compel the production of the documents reviewed by Jeffrey Fara. Once again, I have been provided with no deposition excerpts to review. Defendants assert that he is a longstanding friend of Dr. Henderson, and that he purchased Cosamin on March 27, 1992, thereby triggering the on sale bar defense. (Paper

---

**28.** Although it does not appear that Picard was designated by the plaintiff to give testimony on its behalf regarding the issues surrounding the on sale bar defense, his testimony may nonetheless take on additional significance if the defendants are able to demonstrate the foundational elements of Fed.R.Evid. 801(d)(2)(D).

no. 145, at 6–7). Additionally, the defendants contend that Fara reviewed a "notebook" of documents with plaintiff's counsel before his deposition, but, at his deposition, plaintiff's counsel refused to disclose the contents of the notebook, asserting the work product doctrine. *Id.* I have reviewed in camera the nine documents Fara was shown,[29] and this review, coupled with the sparse record regarding Fara's deposition, convinces me that the defendants have not demonstrated the foundational elements to trigger Rule 612. Thus, the motion to compel the nine documents reviewed by Fara is denied.

### CONCLUSION

In conclusion, the eleven documents reviewed by Sharbaugh, and the documents reviewed by Dr. Henderson, except for no. 23, shall be disclosed. The motion to compel as to Picard, Todd Henderson and Fara is denied. Plaintiffs will make the ordered disclosures within 14 days of this order. In addition, I will permit a limited reopening of the depositions of Sharbaugh and Dr. Henderson to permit defendants to examine them further regarding their use of the documents I have ordered disclosed, and to further test their memories in light of these documents. Counsel will, within 14 days of this order, contact my chambers to schedule a telephone conference call to discuss the limits of these depositions.

---

29. I have had many opportunities to date to interact with counsel for the parties in resolving discovery disputes. In all significant instances, counsel for the parties have behaved with considerable skill and professionalism in a difficult, hotly contested case. From what I have seen, I have no reason to doubt the representations of plaintiff's counsel regarding the universe of documents used to prepare the deposition witnesses who are the subject of this dispute, or the identification of the documents used to prepare each of those witnesses.